**STATE of Missouri, Respondent,**

v.

**Rudolph H. ALLEN, Appellant.**

**No. WD 39274.**

Missouri Court of Appeals,
Western District.

Feb. 2, 1988.

Donald W. Petty, Gladstone, for appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for respondent.

Before COVINGTON, P.J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a jury conviction for possession of a controlled substance, in violation of § 195.020, RSMo 1986. The judgment is reversed and appellant ordered discharged.

Appellant presents two points which, in summary, charge the trial court erred in (1) overruling his motion to suppress evidence obtained as a result of a motor vehicle search in that the search which discovered the evidence was without probable cause and without consent, and (2) in overruling his motion for acquittal because the prosecution failed to prove appellant was in possession of more than 35 grams of marijuana.

The pertinent facts are as follows:

On September 23, 1986, a Missouri Highway Patrolman was operating his vehicle westbound on I-70 in Lafayette County, Missouri. At about mile post 57, he observed an eastbound vehicle. (No other eastbound vehicles were present.) The trooper determined by radar that the eastbound vehicle was traveling at 66 m.p.h., some 11 miles per hour above the then-permitted speed limit. The trooper crossed the median and pursued the eastbound vehicle. The red lights atop the patrol vehicle were not operational, so the trooper drove alongside the eastbound vehicle and another trooper (a passenger in the vehicle) signaled to the operator of the eastbound vehicle to pull over and stop, and the eastbound vehicle responded immediately.

The trooper who had been driving the patrol vehicle approached the driver's side of the eastbound vehicle and asked the driver for his license. The driver (appellant) immediately provided the trooper with an Illinois operator's license. The trooper had observed Illinois license plates on the vehicle and asked for registration papers. Seated in the right front seat was a female passenger, who presented to the trooper an automobile-rental agreement, which was not legible, and her Illinois driver's license. The trooper asked appellant if he (appellant) would accompany him (the trooper) back to the patrol vehicle and appellant readily agreed.

The two troopers and appellant returned to the patrol vehicle. One trooper engaged appellant in conversation while preparing a "warning ticket." The trooper asked appellant where he was going. According to the trooper's testimony, appellant told him that they were en route to Chicago, Illinois, and were coming from Jackson, Kansas. The trooper testified he thought that was unusual since he had lived and worked in the general area for years and had never heard of Jackson, Kansas. The trooper then retrieved an atlas from the visor over the steering wheel and asked appellant where Jackson, Kansas was located. Appellant then responded, "Yeah, it's around Kansas City." The trooper then stated, "Do you mean Jackson Avenue?", to which appellant responded, "Yeah, Jackson Street." The trooper then asked appellant who the female passenger was, and appellant told the trooper she was his (appellant's) girlfriend. The trooper then asked her name and appellant, at first, mumbled, then stated, "I don't know her name." The trooper thought it unusual that appellant would not know the name of the claimed girlfriend, and told appellant so, to which appellant responded, "Well, her name is Martha Lewis." The trooper, being in possession of the female's Illinois driver's license, observed the name thereon as Maureen Wright, which was her correct name. The trooper testified that appellant was evasive in his responses, would mumble and stutter, which led to the trooper's asking the questions more than once. The trooper asked appellant where he had been specifically, and appellant responded that he had been at a "guy's house." The trooper asked appellant how long he had

been there and appellant said a couple of days. The trooper then asked appellant if he could look through the vehicle and appellant responded, "Sure, go ahead." The trooper handed a written consent to search form to appellant and asked him to sign it. According to the trooper, appellant started to sign the form and then stated to the trooper, "Well, the car is rented to her, so maybe I should let her sign it." The trooper then stated to appellant, "That's okay. I'll go up and ask her, and if she doesn't want to sign it, I'll come back, and you can sign it." To this, appellant responded, "Okay".

The trooper then proceeded to the right side of the stopped vehicle and engaged the female passenger in conversation. He asked her to step outside the vehicle and she did so. The trooper and the female passenger were standing at the right-front fender of the stopped vehicle on the shoulder when the trooper asked her if he could look through the stopped vehicle. According to the trooper's testimony, she stated, "That will be okay." At that point, the trooper handed her a written consent to search form, along with the request that she sign it. She started to sign the form, then stopped and told the trooper, "I really don't know if I should sign this or not."

The trooper, having received an oral consent from both appellant and the female, commenced a search of the interior of the vehicle in the front seat area. He checked for weapons and found none. He removed the keys from the ignition, went to the trunk, and upon opening it, observed a large trash bag containing what he suspected to be marijuana. Later, chemical analysis established the substance to be marijuana and its weight was nearly 19 pounds. Both appellant and the female were placed under arrest.

A pre-trial motion to suppress was filed and a hearing was held on the motion. Both appellant and the female testified only that they had not given the trooper consent to search the vehicle. The motion was denied. Neither appellant nor the fe-

male testified at trial. The evidence closed. Judgment and sentence were entered in accordance with the jury's verdict. This appeal followed. Any additional facts deemed necessary to the disposition of this appeal are disclosed *infra*.

Under his point (1), appellant contends that the trooper conducted an illegal search of the vehicle.

There is no question that the record herein discloses that a voluntary (oral) consent to search the stopped vehicle was given the trooper by both the appellant and the female passenger. It is correct that both appellant and the female passenger at the hearing on the motion to suppress denied they had given consent. The trooper repeatedly testified that they both gave their oral consent. The question came down to whom the trial court believed. The credibility of witnesses is exclusively within the province of the trial court.

The record reveals this was a "warrantless search". Such searches are permitted if conducted by consent. The state has the required burden to prove voluntary consent by a preponderence of the evidence, *State v. Johns*, 679 S.W.2d 253, 261 (Mo. banc 1984), cert. denied, 470 U.S. 1034 (1985). The record reveals that burden was met herein.

Appellant asserts that the failure of the trooper to secure written consent reflects upon the voluntariness of the oral consent. This contention has no merit in light of direct unequivocal testimony that both parties gave oral consent to the trooper. The trial court was at liberty to consider this fact, but also was at liberty to reject this fact as it bore upon the issue of voluntariness. It is obvious by its ruling upon the motion to suppress that the trial court rejected this fact as affecting voluntariness.

Under his point (2), appellant charges the trial court erred in denying his motion for judgment of acquittal. This charge is based upon appellant's allegations that the evidence failed to prove that appellant was in possession of more than 35 grams of

marijuana, in that the evidence did not establish appellant exercised control and management over the marijuana or that appellant knew the object he possessed was marijuana. In this contention appellant is correct.

■ In prosecution for possession of a controlled substance, the state is required to prove that an accused knowingly and intentionally possessed the controlled substance, plus that the accused was aware of the nature and presence of the controlled substance. *State v. Barber*, 635 S.W.2d 342, 343 (Mo.1982). These elements can be, however, and in most instances are, established by circumstantial evidence. *Barber, supra,* at 343. Actual possession, or rather the proof of actual possession, is not required. Constructive possession will support a conviction for the offense. *State v. Faulkner*, 672 S.W.2d 373, 375 (Mo.App. 1984).

■ Knowledge of the presence of controlled substances, or the control of the same, cannot be inferred if a person is present, but is found not to have exclusive use or control of the premises. *Faulkner, supra,* at 375. This rule is consistent with the rule that one in exclusive possession and/or control of the premises is deemed to know and therefore possess the controlled substance. The present case obviously involves an automobile and not premises in the sense of realty. Since our society recognizes the varied use of automobiles, the exclusive possession of premises rule has been modified when automobiles are involved because of "the reality of the contemporary use of the automobile as a means of social accommodation". *State v. Bowyer*, 693 S.W.2d 845, 848 (Mo.App. 1985). This modification declares that the exclusive possession rule is not applicable if there is evidence that the accused has not been in possession of the vehicle for a period of time prior to the discovery of the controlled substance or that others have had access to the automobile. *State v. Bowyer*, 693 S.W.2d at 848–49, adopting

and quoting from *Farmer v. The State*, 264 S.E.2d 235, 238 (Ga.App.1979).

■ The record of the present case fails to establish either actual or constructive possession by appellant of the controlled substance. There is no evidence upon this record of any of appellant's belongings in the trunk, but rather, the trooper testified that he found only women's clothing in the trunk. There was no evidence of any controlled substance anywhere else in the vehicle. There was no evidence of exclusive control of the vehicle by appellant. The evidence adduced at trial simply fails to establish either actual or constructive possession of a controlled substance by appellant.

The judgment herein is reversed and the appellant is ordered discharged.

All concur.