STATE of Missouri, Respondent,

v.

Severino VILLA-PEREZ, Appellant.

No. 74110.

Supreme Court of Missouri,
En Banc.

June 2, 1992.

As Modified on Denial of Rehearing
June 30, 1992.

898

Steven J. Harris, Ellen Flottman, Columbia, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Joseph P. Murray, Asst. Attys. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

PER CURIAM.

Found guilty of transporting and possessing more than 35 grams of marihuana, §§ 195.020 and 195.025,[1] defendant's principal challenge is to the sufficiency of the evidence. We affirm.

1. All references are to RSMo 1986 unless otherwise stated. Section 195.020, repealed in 1989, was replaced by § 195.202, RSMo Supp.1989.

The salient facts surrounding defendant's arrest and seizure of the marihuana are in large part undisputed. At 2:30 a.m., November 22, 1988, Officer Matt Brown of the Missouri State Highway Patrol, while patrolling Interstate I–44 in Greene County, observed a large U–Haul truck (truck) traveling in the eastbound lane. Though it did not appear to be committing a moving violation, Brown stopped the truck to determine whether it conformed to the requirements of §§ 304.170 to 304.230 inclusive, prescribing weight limits for motor vehicles on Missouri highways. Section 304.230.2 empowers "any peace officer or any highway patrol officer" to stop a vehicle subject to the weight limits "upon the public highways for the purpose of determining whether such vehicle is loaded in excess of the provisions of" the cited sections.

The truck slowed and pulled to the side of the highway at Brown's direction and as he approached the cab, the officer saw defendant for the first time. Defendant, who was the sole occupant, appeared to be a Hispanic male, and at Brown's request for a driver's license and vehicle registration, produced a Mexican national driver's license and a rental agreement for the truck. During this process, Brown, who spoke no Spanish, found it difficult to communicate with defendant who in turn appeared to have difficulty understanding English.

With the license and rental agreement in hand, Brown escorted defendant to the patrol car, where he inspected the agreement and noted it was signed by a second party in southern Oklahoma. He asked defendant if he possessed a work pass or green card and defendant showed Brown the card. In response to further questions, defendant related he had come from El Paso, Texas, and was heading to Chicago. When asked what he was hauling, defendant "said something in Spanish and shrugged his shoulders as if he did not know."

With misgivings roused by the circumstances, Brown, a thirteen year veteran of the highway patrol involved in a number of drug seizures during those years, sensed defendant might be hauling contraband. Acting on that suspicion, Brown returned to the truck and sniffed at the rear door where he detected the odor of marihuana. The cargo compartment of the truck was secured by a combination lock and Brown instructed defendant to open it. Defendant picked up the lock, turned the knob once or twice, dropped the lock then "shrugged his shoulders and kind of made a motion with his hand such that indicating he couldn't open it." Brown repeated the request and defendant again picked up the lock but again dropped it. At that juncture Brown, with a heavy crescent wrench procured from his car, broke the lock and opening the compartment, was met with the strong odor of marihuana. He lifted a carpet lying on the floor and found approximately ten packages wrapped in cellophane plus two which were broken. The packages contained 284 pounds of marihuana with an approximate "street" value of at least $250,000.

At trial Brown, summarizing a portion of the evidence which led him to suspect the truck contained drugs, recounted that defendant was a Hispanic male traveling in a rental truck, rented in the name of a second party. Defendant had very little luggage, his trip began at El Paso, a Texas border town, and his destination was Chicago. Further, defendant "appeared to be selective about his ability to understand English."

Defendant's motion to suppress the marihuana was denied and in this bench tried case, he communicated through an interpreter. The court finding defendant guilty of possessing more than 35 grams of marihuana, § 195.020, and of transporting marihuana, § 195.025, imposed consecutive prison terms of five years for possession and ten years' for transportation, and following an evidentiary hearing, the defendant's postconviction Rule 29.15 motion was denied. In defendant's consolidated appeals to the Southern District, his convictions and sentences were overturned on that court's finding that the evidence was insufficient to support the convictions. We accepted transfer and now affirm.

Defendant challenges: (1) the sufficiency of the evidence; (2) the court's refusal to suppress the marihuana because it was the product of an unreasonable search and seizure; (3) violation of defendant's equal protection rights when the officer employed defendant's "race" in formulating his suspicion that the truck was carrying drugs; (4) his two convictions under the double jeopardy doctrine; and (5) the performance of trial counsel which he contends was constitutionally ineffective.

## SUFFICIENCY OF EVIDENCE

■ Defendant alleges the state failed to prove he "knowingly possessed more than thirty-five grams of marihuana" and that he "knowingly transported marihuana by means of a vehicle."

■ In reviewing these challenges, the state's evidence together with all reasonable inferences therefrom are considered in a light most favorable to the state, and any contrary evidence must be disregarded. *State v. Livingston*, 801 S.W.2d 344, 345 (Mo. banc 1990). The Court determines whether there was sufficient proof from which the trial court could reasonably have found defendant guilty, but does not weigh the evidence. *State v. Hood*, 680 S.W.2d 420, 423 (Mo.App.1984).

■ Possession may be proved by circumstantial evidence from which knowledge may be inferred, *State v. Weide*, 812 S.W.2d 866, 869 (Mo.App.1991), and in such cases, the facts and circumstances to establish guilt must be consistent with each other, consistent with the guilt of the defendant, and inconsistent with any reasonable theory of his innocence. *State v. Livingston*, 801 S.W.2d at 347.[2]

The record discloses proof sufficient for the trial court's finding of the essential facts supporting the conviction. Defendant, the sole occupant of the truck when stopped by the officer, had protracted exclusive control of the truck containing the proscribed substances, which alone raised an inference of knowing possession of contraband. *State v. Barber*, 635 S.W.2d 342, 343 (Mo.1982); *State v. Allen*, 817 S.W.2d 526, 527 (Mo.App.1991). Defendant counters, arguing the cargo compartment of the truck was not within his control and directs our attention to his testimony describing events which he contends demonstrates he had no access to the cargo compartment. He insists he was shooting pool with an unidentified friend in a cantina in Juarez, Mexico, when they were approached by a stranger who asked the friend to drive a truck to and from Chicago; however, the friend was unable to accept and defendant, who had been unemployed for several days, offered to take the job. The stranger stated he would pay $500 dollars each way and when defendant agreed, he was taken to an El Paso, Texas, parking lot where the U-Haul truck waited. The cargo door was locked and defendant, who claims never to have looked inside the compartment, was told it contained furniture. He further testified that he was to drive to Chicago and meet the stranger at a designated park. Two days into the journey, defendant was stopped by Officer Brown.

As noted by the trial court, defendant's anomalous tale fairs poorly under scrutiny. It is incredible that a person would entrust more than $250,000 of marihuana to a complete stranger and ask him to drive 1,300 miles across the United States. Defendant by his own admission spoke little English and had difficulty understanding it, and there is no showing he had ever been north of the Rio Grande area much less driven to Chicago. During cross-examination, defendant admitted he did not know the stranger's name and although he was to drive to some park in Chicago, there was no prearranged time for the alleged meeting. Further, defendant had no means of contacting the stranger in Chicago, but asserts the

---

**2.** The state urges that we modify the above cited traditional measure of circumstantial evidence and adopt the standard discussed in *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). The Court is asked to abandon the distinction between direct and circumstantial evidence for purposes of appellate review. The state argues such distinction is confusing, applied disparately and no longer reflects the majority or federal view. Though the argument is persuasive and its time may come, today we decline the state's invitation to abandon the traditional language.

stranger would somehow approach him when he reached his destination, though he was apparently free to arrive in Chicago any day he chose. In sum, he was entrusted with a $250,000 plus marihuana cargo (of which he knew nothing) and would simply wait an indeterminate time until this stranger found him. There is little to fault the trial court's skepticism or his judgment call as to defendant's credibility.

Defendant argues that because the truck was leased to another party, because that none of defendant's personal belongings or fingerprints were found inside the cargo compartment, and because he was unable to open the combination lock when directed by the officer, it must be conceded he had no access to the compartment.

■ First it should be noted defendant suggests no plausible explanation why the truck was rented in Oklahoma and apparently driven to the Mexican border to take on a load of "furniture". The fact the truck was leased to another party does not in itself absolve defendant, for as stated in *State v. Barber*, 635 S.W.2d 342, 343 (Mo. 1982), "If actual possession has not been shown, *constructive possession will suffice when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance.*" (Emphasis added.) Further, the facts that neither defendant's personal belongings nor fingerprints were found in the cargo compartment and no marihuana was found outside the compartment, though relevant, are not conclusive. The "knowing possession" factor may be satisfied if the accused has been in possession of the vehicle for a period of time prior to the discovery of the controlled substance and others have not had access to the truck. *State v. Allen*, 744 S.W.2d 865, 868 (Mo.App.1988). Here, defendant admits he was the sole occupant of the vehicle for two days from El Paso to Greene County. The combination lock effectively barred any interloper from entering the cargo compartment. Though, defendant asserts he had neither control nor possession (constructive or actual) of the marihuana, in *State v. Ingleright*, 782 S.W.2d 147 (Mo.App.1990), mere presence

in an automobile registered to a second party which contained drug paraphernalia was held insufficient to establish a knowing and intentional possession, however, the court looked to other factors which supported a finding of "conscious possession," including defendant's continuing exclusive control of the car. There it was noted defendant had traveled alone in the car more than 400 miles, when he was stopped. *Id.* Here, defendant had exclusive control of the truck driving more than 600 miles during a two day period. Also, the value of the marijuana is relevant for in *State v. Weide*, 812 S.W.2d 866, 869 (Mo.App.1991), methamphetamine valued at $2,000 was considered an incriminating fact. In this instance the marihuana with an estimated street value of $250,000–$300,000, most certainly touches the questions of intent and knowledge.

Finally, defendant's declared inability to open the combination lock adds little to his argument. The trial court was not bound to believe defendant's story and "we defer to the trial court's superior position from which to determine credibility." *State v. Lytle*, 715 S.W.2d 910, 915 (Mo. banc 1986). Defendant's actions could well be viewed as an attempt to stall entrance to the cargo compartment, for if in fact he did not know the combination, the question persists why did defendant not relay this to the officer instead of twice attempting to open the lock.

■ We find the evidence sufficient to establish guilty knowledge and thus support the conviction for possession § 195.020 as well as transporting marihuana, § 195.-025. Once knowing possession is found, defendant's admission he drove the truck concludes the inquiry as to the transporting conviction. This is especially so when considering a person may be found guilty of transporting marihuana without possessing it. *State v. Farias*, 785 S.W.2d 664, 667 (Mo.App.1990).

### SEARCH AND SEIZURE

■ Defendant next attacks the marihuana seizure alleging Officer Brown made a "pretextual" stop of the truck without

probable cause or reasonable suspicion that the truck was in violation of any law and that once Officer Brown had determined the operation of the truck was proper, the seizure of defendant's person should have ceased.[3] At trial, defendant's motion to suppress the marihuana cache was denied, and as stated in *State v. Burkhardt,* 795 S.W.2d 399 (Mo. banc 1990):

> The proponent of [a motion to suppress] has the burden of establishing that his constitutional rights were violated by the challenged search or seizure, however the burden is on the State to justify a warrantless search and to demonstrate that such falls within an exception to the warrant requirement, e.g. search of a stopped car on a highway. A search of an automobile on the highways pursuant to probable cause to believe that contraband, weapons or evidence of a crime are within the automobile is a well established exception to the Fourth Amendment warrant requirement ... Such automobile search may be conducted on probable cause to believe that contraband is concealed within, a belief springing from circumstances that would justify issuance of a warrant. Probable cause may arise when the facts and circumstances within the knowledge of the seizing officer are sufficient in themselves to produce in a man of reasonable caution a belief that the contents of the automobile offend the law.

*Id.,* 795 S.W.2d at 404 (citations omitted).

■ Our role is limited to a determination of sufficiency of the evidence to sustain the trial court's finding, *State v. Baskerville,* 616 S.W.2d 839, 843 (Mo.1981), and in so doing, we examine all circumstances and the total atmosphere of the case, *State v. Burkhardt,* 795 S.W.2d at 404, and defer to the trial court's vantage point for assessing the credibility of the witnesses and weighing the evidence. *State v. Beck,* 687 S.W.2d 155, 158 (Mo. banc 1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1985).

■ Defendant insists Officer Brown's true reason for the stopping was to search for contraband, notwithstanding Brown's testimony that he stopped the truck to see if it complied with Missouri vehicle weight limits. As previously noted, § 304.230.2 empowers highway patrolmen to stop any vehicle covered by the weight limits on public highways to determine its compliance with the requirements of Chapter 304. The officer stated he had often stopped commercial vehicles to check for such compliance and unequivocally denied he stopped this truck except to inspect for purposes of § 304.230.2. The trial court evaluating his credibility denied the motion to suppress and it has not been shown this determination was clearly erroneous. *State v. Beck,* 687 S.W.2d at 158.

Any doubts as to Officer Brown's authority to search the truck are dispelled by his detection of the odor of marihuana issuing from the rear door. It has been routinely held that "[w]here there is a legitimate reason for stopping a vehicle, and the officer thereafter detects the odor of marihuana emanating from the stopped vehicle, and is by virtue of training or experience able to identify it as marihuana, an ensuing search is based on probable cause." *United States v. Loucks,* 806 F.2d 208, 209, ft. 1 (10th Cir.1986); *see also United States v. Reed,* 882 F.2d 147, 149 (5th Cir.1989) (detecting the odor of burnt marihuana alone justified search of vehicle); *United States v. Haley,* 669 F.2d 201, 203 (4th Cir.1982), *cert. denied,* 457 U.S. 1117, 102 S.Ct. 2928, 73 L.Ed.2d 1329 (1982). The act of standing near and inhaling or of sniffing at the truck's rear door was not a search within the meaning of the Fourth Amendment. *United States v. Gonzalez–Basulto,* 898 F.2d 1011, 1013 (5th Cir.1990). Defendant challenges Brown's assertion he smelled marihuana, arguing that the construction of the cargo compartment rendered such detection a physical impossibility. However, we decline as defendant urges, to

---

**3.** Defendant is mistaken considering the sequence of events. There is no showing Brown had established the truck's compliance within the weight limits, and accordingly was justified in momentarily approaching the rear of the truck to inspect. None of Brown's actions bore upon the constitutionality of the initial stop and seizure.

take judicial notice of the precise construction of standard U–Haul cargo compartments, *see Endicott v. St. Regis Investment Company,* 443 S.W.2d 122, 126 (Mo. 1969), and again, the trial court found Brown's testimony credible as to this fact and nothing has been shown demonstrating the trial court's ruling was clearly erroneous.

## EQUAL PROTECTION

■ Defendant next contends his rights as guaranteed under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 2 and 15 of the Missouri Constitution were violated when Brown considered defendant's race and national origin in formulating his belief that the truck contained contraband. The legal finding of probable cause does not rest upon defendant's national origin or appearance. Officer Brown smelled marihuana from the rear of the truck and this alone suffices for probable cause. The point is without merit.

## DOUBLE JEOPARDY

■ Defendant next contends that his convictions for both possession of marihuana in violation of § 195.020 and for transporting marihuana in violation of § 195.025 constitute double jeopardy as each rests on the same set of circumstances. Defendant's point is without merit.

■ As this Court recently held in *State v. McTush,* 827 S.W.2d 184 (Mo. banc 1992), a defendant may be convicted in one proceeding of more than one offense based upon the same conduct if the legislature intends to punish the conduct under more than one statute. *See McTush,* 827 S.W.2d at 186; *Missouri v. Hunter,* 459 U.S. 359, 366–69, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983). Legislative intent regarding cumulative sentences is determined first by examining the statutes under which the defendant was convicted. *McTush,* 827 S.W.2d at 187. Where, as here, the statutes are silent, recourse must be made to Missouri's general cumulative punishment statute, § 556.041, which provides:

When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:

(1) One offense is included in the other, as defined in § 556.046; or

(2) Inconsistent findings of fact are required to establish the commission of the offenses; or

(3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or

(4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

The only exception contained within § 556.041 under which the defendant could arguably obtain relief is § 556.041(1), the included offense exception. Included offenses within the context of § 556.041 are defined by § 556.046 as offenses (1) established by the same or less than all the facts required to establish the commission of the offense charged, (2) specifically denominated by statute as a lesser degree of the offense charged, or (3) consisting of an attempt to commit the offense charged or an offense otherwise included therein. § 556.046.1. Since neither possession of marihuana nor transporting marihuana is specifically denominated by statute as a lesser degree of the other and neither consists of an attempt to commit the other, the defendant can rely only upon § 556.046.1(1), which appears to codify the lesser included offense test announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to establish that his convictions are impermissibly based upon included offenses. *See McTush,* 827 S.W.2d at 188.

■ If each of the offenses for which the defendant was convicted requires proof of an element which the other does not, the offenses are not included offenses within

the meanings of § 556.046.1(1). *McTush,* 827 S.W.2d at 188. Conviction for possession requires proof the defendant knowingly and intentionally possessed the proscribed substance and that he was aware of the presence and nature of the substances in question. *State v. Barber,* 635 S.W.2d at 343. To convict for transportation, the state must prove intentional transporting of the substance by means of a vehicle, § 195.025.1(1), and no evidence of possession is required. *State v. Farias,* 785 S.W.2d at 667. Thus, it is entirely possible defendant could have been found guilty of transportation and not of possession as the trial court could have believed defendant did not have access to the cargo compartment but knew full well its contents. The crimes of "possession" and "transportation" of marihuana are discrete and separate offenses. Accordingly, we find no merit in defendant's assertion that he was twice placed in jeopardy for the same crime. *See also State v. Brown,* 750 S.W.2d 139, 142 (Mo.App.1988), which held "possession" and "manufacturing" were separate crimes; and *Wright v. State,* 764 S.W.2d 96, 98 (Mo.App.1988), where it was determined stealing a controlled substance and possession of the same were different crimes for purposes of double jeopardy.

### INEFFECTIVE ASSISTANCE OF COUNSEL

 Finally, defendant contends he was denied effective assistance of counsel, stating he was prejudiced because he and counsel could not communicate without an interpreter and counsel visited him only a few times before trial. Our review for ineffective assistance of counsel is measured against *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh. denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), under which we determine whether counsel failed to exercise the customary skill and diligence a reasonably competent attorney would perform under similar circumstances, and then determine if such failure prejudiced movant. *Id.,* 104 S.Ct. at 2064. We are not bound to first look to counsel's performance but may first examine for prejudice.

*O'Neal v. State,* 766 S.W.2d 91, 92 (Mo. banc 1989), *cert. denied,* 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989).

In the present case, defendant claims he was prejudiced yet no specifics are provided. He has not claimed counsel failed to fully apprise him of the charges, the possibility or effect of pleading guilty, or the range of punishment. Further, defendant does not claim he was unable to communicate satisfactorily through the interpreter, and there is no assertion the interpreter somehow impaired the attorney-client relationship. In sum is there a showing counsel was deficient in his representation. We cannot say the motion court clearly erred in denying defendant's Rule 29.15 motions.

Affirmed.

ROBERTSON, C.J., COVINGTON, HOLSTEIN, BENTON and THOMAS, JJ., and BLACKMAR, Senior Judge, concur.

ALBERT L. RENDLEN, Senior Judge, concurs in separate opinion filed. PRICE, J., not sitting because not a member of the Court when case was submitted.

ALBERT L. RENDLEN, Senior Judge, concurring.

While concurring in the principal opinion, I believe it important to point out certain additional aspects of the record which support the judgment and require affirmance of this cause.

The finding by the trial court that the officer's testimony concerning his detection of the odor emanating from the cargo compartment sufficed to permit the search; however, these further facts in themselves justify the officer's action: 1) The late hour of the stop, *State v. Burkhardt,* 795 S.W.2d 399, 405 (Mo. banc 1990); 2) The location of the stop, *Id.* As in *Burkhardt,* the stop had occurred on Interstate I–44 in the southwestern part of the state, a route known to be used by drug traffickers to bring narcotics into this state. However as noted in *Carrol v. U.S.,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), though the locale may be relevant, like any factor we must view such within the totality of the

circumstances; 3) Defendant, a Mexican national, had commenced his journey from El Paso, Texas, and was traveling to Chicago. In *U.S. v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the court held traveling from Honolulu to Miami was not, standing alone, a cause for suspicion but coupled with the circumstances surrounding the trip such fact could raise suspicion. *Id.*, 109 S.Ct. at 1586. Additionally the U.S.–Mexico border region is a well known smuggler's route and defendant apparently had little command of the English language, yet he was driving a truck originally rented to a second party in southern Oklahoma and defendant, inexplicably, had begun his trip at El Paso, Texas; and 4) To Officer Brown, it appeared defendant was apparently using the language barrier artificially to evade a full dialogue. Defendant's conduct could properly be considered when measuring for probable cause for a warrantless search of the truck. *State v. Burkhardt*, 795 S.W.2d at 405.

The individual circumstances may appear innocent in isolation, however, we do not view the facts in a vacuum. As aptly noted in *United States v. Sokolow*, events which singly appear consistent with innocent travel may in the aggregate give rise to reasonable suspicion. *Id.*, 109 S.Ct. at 1586.

As to defendant's equal protection argument, the officer properly considered defendant's national origin and appearance when concluding there was probable cause to search the vehicle. Though defendant contends otherwise, he cites no authority holding appearance and national origin may not be considered by law enforcement officials. Indeed, in *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), the Supreme Court held a defendant's Mexican appearance was a relevant factor to be considered by officers when making a *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) stop. *United States v. Brignoni–Ponce*, 95 S.Ct. at 2583.