**STATE of Missouri, Plaintiff–Respondent,**

v.

**Baker E. BIGSBY, Defendant–Appellant.**

**No. 19324.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 17, 1995.

Donald R. Cooley, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michelle A. Freund, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Judge.

Baker E. Bigsby (defendant) appeals a conviction of trafficking drugs in the second degree. § 195.223.7, RSMo Supp.1989. Defendant contends his conviction should be reversed because evidence used at trial was obtained by means of an illegal search; because the state destroyed evidence that would have been exculpatory and corroborative of his defense; and because the evidence adduced at trial was insufficient to prove the offense charged. This court affirms.

■ Defendant was tried by the court without a jury. When a defendant waives trial by jury, the trial court's findings have the force and effect of a jury verdict. *State v. Marshell,* 825 S.W.2d 341, 342 (Mo.App. 1992); Rule 27.01(b). "[A]ppellate review is as though a verdict of guilty has been returned by a jury. If there is substantial evidence to support the findings of the trial court, its judgment is to be affirmed." *State*

*v. Giffin,* 640 S.W.2d 128, 130 (Mo.1982). In its review the appellate court accepts as true the evidence that tends to prove the defendant's guilt and all inferences favorable to the state. Contrary evidence and inferences are disregarded. *Id.*

Trooper Michael Woods, a Missouri Highway Patrol officer, observed defendant driving a Ford pickup truck east on Interstate Highway No. 44 in Greene County. Trooper Woods' radar registered the vehicle's speed at 64 miles per hour. The speed limit at that location was 55. Defendant was the only occupant in the vehicle.

Trooper Woods stopped defendant's vehicle. It had Texas license plates, but defendant's driver's license was from the state of California. Defendant told Trooper Woods that the pickup belonged to a friend. He presented a copy of the vehicle registration; however, the registration was not in the friend's name. The vehicle was registered to Othon Latha from El Paso, Texas.

Defendant accompanied Trooper Woods to the officer's patrol car. Trooper Woods wanted to "get the ownership of [the] vehicle straightened out before Mr. Bigsby left." He thought it possible that the vehicle had been stolen. He explained:

> After—after going through all the information that I've just testified to, I told Mr. Bigsby that I was suspicious of his trip and then I asked him for permission to search his vehicle.

Defendant told Trooper Woods that he believed the trooper had the right to search the pickup. Trooper Woods explained that he was not saying he had the right to search the pickup; he was asking permission to search it. Defendant replied, "Yeah. I don't care. Go ahead."

Trooper Woods found a paper sack inside the passenger compartment of the pickup. It had been torn open and contained a small amount of marijuana. A jacket belonging to defendant was on the passenger seat of the pickup. There were three hand-rolled marijuana cigarettes and a package of cigarette papers in one of the jacket pockets. There was a patent medicine bottle in the pickup

that contained marijuana. An airplane boarding pass issued in defendant's name and $588 were also found. The boarding pass was issued to defendant.

After Trooper Woods searched the passenger compartment, he looked underneath the pickup truck. He observed that the gas tank had been lowered. He then looked into the stake holes in the top of the pickup bed. While looking in one of the stake holes, he smelled marijuana. Further examination disclosed a false floor beneath the bed of the pickup. The compartment between the two floors contained 275 pounds of marijuana.

Defendant contends the evidence was not sufficient to support his conviction. He contends the evidence failed to establish, beyond a reasonable doubt, that he knew marijuana was stored in the hidden compartment below the bed of the pickup he was driving.

Defendant concedes that knowledge of the presence of a controlled substance may be proved by circumstantial evidence. *See State v. Villa–Perez,* 835 S.W.2d 897, 900 (Mo. banc 1992). However, he argues that the state bears a greater burden of proof in cases in which it relies on circumstantial evidence. He cites *Villa–Perez* for that proposition.[1]

At the time *Villa–Perez* was decided, Missouri courts viewed circumstantial evidence cases differently than direct evidence cases. Circumstantial evidence cases required a higher standard of proof than direct evidence cases. This changed, however, with the Supreme Court's decision in *State v. Grim,* 854 S.W.2d 403 (Mo. banc 1993).

■ In *Grim* the court held that the burden of proof, whether based on direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence, is satisfied when guilt is proved beyond a reasonable doubt "so long as the evidence meets the minimal appellate standard required by due process." *Id.* at 406. The minimal appellate standard is met when a conviction is supported by enough evidence that a reasonable fact finder, taking all evidence in the light most favorable to the state, would be convinced beyond a reasonable doubt. *Id.*

---

1. See, however, *Villa–Perez,* 835 S.W.2d at 900  n. 2.

Defendant testified that he told an acquaintance in Texas that he was moving across town—from one location in the Los Angeles, California, area to another location in that area; that he would like to have a truck "to make the move easy." According to defendant, the acquaintance, Bernie Johnson, told him he was moving from Texas to California; that he had a new pickup truck that he needed to have taken to California. However, the pickup was in New Mexico. Defendant testified that his friend offered to let him use the pickup if he would drive it to California.

Defendant flew to Albuquerque, New Mexico. He testified that he had business to conduct in Texas; that he planned to conduct his business there and then drive the pickup to California. He testified, however, that when he got the pickup he decided to go to Missouri to see his grandmother-in-law and mother-in-law in Creve Coeur and his mother in Hannibal. He claimed he was en route to those locations when he was arrested in Greene County.

Defendant was charged with committing the offense of trafficking drugs in the second degree by having knowingly possessed more that one hundred kilograms of marijuana. The "knowing possession" element of a drug offense may be satisfied if a defendant has been in possession of the vehicle in which the controlled substance is found for a period of time before its discovery and others have not had access to the vehicle. *State v. Villa–Perez, supra,* at 901; *State v. Allen,* 744 S.W.2d 865, 868 (Mo.App.1988).

■ Defendant had exclusive possession of the pickup for 24 hours immediately preceding his arrest. He claimed he intended to take the pickup to California. However, when he was stopped, he was not on a direct route between Albuquerque and Los Angeles nor on a direct route between Albuquerque and the location where he professed to have business to conduct. The pickup was not registered in defendant's name nor in the name of the friend who defendant claimed provided the vehicle for his use.

■ As to defendant's testimony that he was not aware of the modification of the vehicle to accommodate hiding the marijuana or its presence, the trial court was not bound to believe his explanation. *State v. Villa–Perez, supra.* This court, in its review of defendant's conviction, defers to the trial court's superior opportunity to determine credibility. *State v. Lytle,* 715 S.W.2d 910, 915 (Mo. banc 1986).

The evidence was sufficient to support the trial court's finding, beyond a reasonable doubt, that defendant committed the offense of trafficking in drugs in the second degree.

Defendant also contends the trial court erred in overruling his motion to suppress evidence. The motion was directed to the search of the pickup defendant was driving. Defendant claims the search was illegal in three respects. He argues the search was the product of an illegal arrest that "vitiated any alleged consent"; that if defendant was not illegally detained, the alleged consent was involuntarily given; that in the event the consent to search is upheld, "the search exceeded the scope of the consent and the object of the search."

■ This court's review of a ruling on a motion to suppress evidence is based on the evidence that was before the trial court. The question for resolve is whether that evidence was sufficient to sustain the trial court's finding. *State v. Villa–Perez, supra,* at 902. In reviewing a motion to suppress evidence, an appellate court must consider all circumstances of the case. *State v. Milliorn,* 794 S.W.2d 181, 183 (Mo. banc 1990). The trial court's ruling will be upheld if it is plausible on the basis of the record in its entirety. *Id.* at 184. It will be reversed only if it is clearly erroneous. *Id.*

■ Defendant contends that his presence in the arresting officer's patrol car constituted an illegal arrest. An arrest occurs when surrounding circumstances are such that a reasonable person would believe he or she is not free to leave; when his or her person is seized by law enforcement authorities. *U.S. v. Mendenhall,* 446 U.S. 544, 553–54, 100 S.Ct. 1870, 1876–77, 64 L.Ed.2d 497 (1980). "An arrest requires *either* physical force ... *or,* where that is absent, *submission* to the assertion of authority." *California v. Ho-*

*dari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991).

Defendant argues that the circumstances in this case are similar to those in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). In *Royer* the court held that circumstances that produced a consent to a search of luggage amounted to "confinement" of a suspect; that the confinement tainted the consent so as to render the search illegal. *Id.* at 501, 103 S.Ct. at 1326.

In *Royer* characteristics of an individual at the Miami, Florida, airport corresponded with a "drug courier profile." *Id.* at 493, 103 S.Ct. at 1322. Royer had purchased a one-way ticket to New York for cash. The airline reservation was made in a fictitious name. He was stopped by two detectives who asked him for identification.

A detective retrieved Royer's luggage without his consent and, after escorting him to a small room on the airport concourse where he had been confronted, asked permission to search the luggage. Royer was told he was suspected of transporting narcotics. Royer did not reply but produced a key to one of two of the suitcases the detectives had retrieved. There was marijuana in the suitcase. The second suitcase had a combination locking device. Royer said he did not know the combination but did not object to the second suitcase being opened. The detectives pried it open. It contained more marijuana.

The court held that the request to examine Royer's ticket and identification (his driver's license) was a permissible inquiry. The request was consistent with *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The court concluded, however, that by telling the suspect he was suspected of transporting narcotics and asking him to accompany them to a police room while retaining his airline ticket and driver's license without in any way indicating he was free to depart, the detectives "seized" him "for the purposes of the Fourth Amendment." *Royer*, 460 U.S. at 501, 103 S.Ct. at 1326. The court explained:

> [W]hen the officers discovered that Royer was traveling under an assumed name, this fact, and the facts already known to the officers—paying cash for a one-way ticket,

the mode of checking the two bags, and Royer's appearance and conduct in general—were adequate grounds for suspecting Royer of carrying drugs and for temporarily detaining him and his luggage while they attempted to verify or dispel their suspicions in a manner that did not exceed the limits of an investigative detention. We also agree that had Royer voluntarily consented to the search of his luggage while he was justifiably being detained on reasonable suspicion, the products of the search would be admissible against him. *Id.* at 502, 103 S.Ct. at 1326. The court held, however, that at the time Royer produced the key to the first suitcase, his detention amounted to a more serious intrusion on his liberty than was allowable on mere suspicion of criminal activity.

■ In this case the record belies defendant's claim that his consent to search the pickup was submissive to the officer's exercise of authority. Although defendant's brief speculates that Trooper Woods would have tried to detain defendant had defendant attempted to leave, the record on appeal does not substantiate that assertion. The record does not demonstrate that defendant had been "effectively seized" at the time he consented to a search of the pickup he was driving. Seven to eight minutes elapsed between the time defendant was stopped and the time he consented to the search. There was no show of force by an officer—defendant testified that no officer mistreated or was rude to him. The consent to search the pickup was not vitiated by an illegal arrest of defendant.

Defendant's brief also asserts that his consent for the pickup to be searched was not freely and voluntarily given because defendant did not know he had the right to refuse the request to search the vehicle; that Trooper Woods did not inform defendant that he could refuse to consent to the search.

■ An effective consent to search is not conditional on knowledge of a right to refuse the search. *See U.S. v. Mendenhall*, 446 U.S. 544, 558, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497 (1980); *see also State v. Hyland*, 840 S.W.2d 219, 221 (Mo. banc 1992). When Trooper Woods asked for permission to search the pickup, defendant said he believed

the officer had that right. Trooper Woods replied that he was not saying he had the right to search the pickup, he was asking permission to search. Defendant told Trooper Woods to go ahead.

The consent to search the vehicle was not the product of coercion. The record supports the trial court's finding that the consent was freely and voluntarily given.

■■■ Defendant also claims that in the event the trial court's finding that he freely and voluntarily consented to the search is upheld, the search that was conducted exceeded the scope of his consent.

■■■ The standard for determining the scope of a defendant's consent to a search is what a typical reasonable person would have understood the communication between the defendant and the officer to mean. *State v. Hyland, supra,* at 222. Trooper Woods asked defendant for permission to search the vehicle. Defendant gave permission adding, "I don't care. Go ahead." Defendant placed no limitation on the search.

The evidence was sufficient to sustain the trial court's finding that the search was not based on consent obtained by unwarranted intrusion on defendant's liberty; that defendant's consent was freely and voluntarily given; that defendant imposed no limitation on the scope of the search.

Defendant's remaining point is directed to the state's destruction of evidence that defendant claims was "expected to play a significant exculpatory and corroborative role in the defense." Items seized from the pickup included a boarding pass from defendant's airplane trip from California to New Mexico and an overnight bag and its contents. The boarding pass was dated October 23, 1989. Defendant's arrest occurred October 25, 1989.

The items taken from the pickup were placed in custody of the evidence officer for Troop D of the Missouri State Highway Patrol. In May 1990, Trooper James D. Smith became evidence officer for Troop D. In April 1992 or "maybe a little before that," Trooper Smith sent a form requesting permission to destroy the items that were being held as evidence in this case. The form was returned authorizing destruction of the evidence. It was signed by the prosecuting

attorney and a circuit judge. The items being held, other than cash that had been taken from defendant, were burned on May 13, 1992.

The evidence officer testified that accumulations of evidence in his custody were reviewed on a yearly basis. If evidence has been stored for lengthy periods and there is no indication that it needs to be kept longer, a written request for authorization to destroy the evidence is submitted to the prosecuting attorney for the county where the criminal case was brought. If the prosecuting attorney approves the destruction of the evidence, the request is submitted to a circuit court judge in that county. The judge considers the request and may order the accumulated evidence destroyed. This procedure was followed in this case. It resulted in an order being entered to destroy the evidence even though the case was still pending.

At the conclusion of the evidence, defendant's attorney moved to dismiss the case "for intentional destruction of . . . all of the evidence that was seized from the defendant and from his vehicle." The trial court denied the motion. Defendant contends this was error.

Defendant argues that the state intentionally destroyed evidence that defendant expected to play a significant and corroborative role in his defense. He acknowledges, in making that argument, that in order for his motion to have been granted, he had the burden of proving the evidence that was destroyed possessed an exculpatory value that was apparent before its destruction, and that the evidence that was destroyed was of such nature that he could not obtain comparable evidence by other reasonably available means. *See State v. Richard,* 798 S.W.2d 468, 470–71 (Mo.App.1990).

Defendant contends the evidence that was destroyed corroborated that he only recently acquired possession of the pickup. He argues that the airplane boarding pass and the limited quantity of clothing in the overnight bag corroborated his testimony that he had no knowledge of a secret storage compartment beneath the truck. He contends the evidence would have dispelled the claim that he knowingly possessed the contents of the hidden compartment, the marijuana.

██ Defendant's claim of error with respect to the denial of his motion to dismiss the criminal charge fails in two respects. For a dismissal to be warranted, a showing is required that the officials responsible for the destruction of the evidence knew, before the items were destroyed, that they possessed exculpatory value. *Id.* at 471. There was no indication that those authorizing the destruction of the evidence and those who actually destroyed it had any knowledge concerning the case.

Additionally, in order to be entitled to a dismissal, the evidence that was destroyed would have had to be of a nature that prevented having comparable evidence available by other reasonable means. *Id.* at 470, quoting *California v. Trombetta,* 467 U.S. 479, 488–89, 104 S.Ct. 2528, 2533–34, 81 L.Ed.2d 413 (1984). The trial court heard testimony that explained the nature of the evidence that was destroyed. The trial court did not err in denying defendant's motion to dismiss the criminal charge. The judgment of conviction is affirmed.

GARRISON, P.J., and PREWITT, J., concur.