STATE of Missouri, Respondent,

v.

Kenneth PAGE, Appellant.

Kenneth PAGE, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 18929, 19620.

Missouri Court of Appeals,
Southern District,
Division One.

March 15, 1995.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David G. Brown, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Judge.

After a jury waived trial, Kenneth Page (Defendant) was convicted of trafficking drugs in the second degree, § 195.223, RSMo Supp.1993, and sentenced to ten years' imprisonment. He appeals that conviction. Later, Defendant filed a Rule 29.15 motion to vacate the conviction and sentence. After that motion was denied Defendant appealed. Here, the appeals were consolidated pursuant to Rule 29.15(*l* ).

Defendant presents one point relied on which claims error in his criminal case, No. 18929. Since no claim of error relates to defendant's Rule 29.15 motion, the appeal from the denial of the motion is abandoned. *State v. Oplinger,* 847 S.W.2d 156, 157 (Mo. App.1993).

Defendant's sole point is that the trial court erred in overruling his motion to suppress his statements because the statements were the fruit of an unlawful detention of Defendant in violation of his right to be free from unreasonable searches and seizures as guaranteed by the United States and Missouri Constitutions, in that, "the detention of [Defendant] extended beyond the time reasonably necessary to effect its initial purpose since no new facts justifying reasonable suspicion to detain [Defendant] arose in the interim."

Appellate review of a ruling on a motion to suppress is limited to determining the sufficiency of the evidence to sustain the trial court's finding. *State v. Villa–Perez,* 835 S.W.2d 897, 902 (Mo. banc 1992). The weight of the evidence and the credibility of the witnesses are matters for the trial court's determination. *Id.* The appellate court considers the facts and the reasonable inferences of those facts in the light most favorable to the trial court's ruling. *State v. Rodriguez,* 877 S.W.2d 106, 110 (Mo. banc 1994).

The appellate court will reverse only if the trial court's judgment is clearly erroneous. *State v. Milliorn,* 794 S.W.2d 181, 183

(Mo. banc 1990). "[I]f the trial court's ruling is plausible in light of the record viewed in its entirety," this court " 'may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' " *Id.* at 184 (quoting *State v. Antwine*, 743 S.W.2d 51, 66 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988)). With these principles in mind, this Court holds that the trial court committed no error in overruling Defendant's motion to suppress.

The events which arose on February 1, 1993, at the Greyhound Bus Terminal in Springfield provide the basis for the charge against Defendant. On that date Carl Hicks, a special agent with the Drug Enforcement Administration, and Springfield Police Officer Dana Carrington were working a drug operation and watching for drug shipments via Greyhound buses. They were concentrating on eastbound buses. The officers routinely watched the 11:15 a.m. bus which stopped in Springfield on its way from Los Angeles to St. Louis because they had made numerous prior arrests and seizures of drugs on that bus. Hicks knew from experience that Los Angeles is a source area for drug trafficking operations.

After the bus arrived, the officers watched the passengers disembark and walk into the terminal. The officers then boarded the bus and talked to several passengers who remained on board. Next, the officers looked at the checked luggage in the compartment of the bus. They found five pieces of luggage which had been checked in consecutive order under three different names from Los Angeles to St. Louis. Finding that circumstance "unusual" the officers began interviewing the passengers to determine who was traveling from Los Angeles to St. Louis. One of those persons interviewed was Defendant while he was standing in the parking area next to the bus.

Upon approaching Defendant the officers noticed he was wearing a pager. Hicks identified himself, showed Defendant his badge, and indicated his desire to talk with him.

Responding to Hicks, Defendant said he was traveling from San Bernardino, California, to St. Louis to visit his mother although he did not know her address or phone number. Defendant produced his bus ticket, which had been paid for in cash, but could produce no form of identification. From experience, Hicks knew that drug couriers commonly paid for tickets in cash because they have no credit cards or checking accounts. Upon Defendant's failure to show any identification, Hicks noticed that he became extremely nervous and uncomfortable. Defendant's hands were shaking, his voice was breaking, and his breathing was very rapid.

Hicks then asked Defendant if he had any luggage on board and he replied "No." Because of Defendant's long journey, Hicks found that answer to be "unusual." Hicks asked Defendant to board the bus and show him the location of his seat. Defendant complied with the request and pointed out his portable stereo in the overhead rack above his seat. Hicks asked Defendant for permission to search the stereo and pat Defendant down for contraband drugs. Defendant consented but Hicks found no drugs. At that point, Hicks thanked Defendant for his cooperation and left him in the bus.

When all the passengers had reboarded the bus, the officers requested them to identify their carry-on luggage. The only unclaimed bag was a black travel bag located in the overhead rack across the aisle from Defendant's seat. No passengers were sitting underneath the bag. Responding to the officer's question, Defendant denied ownership of the bag and said that he thought the bag belonged to "a couple of white dudes" who had been sitting underneath it. Hicks checked with the bus driver and found that all passengers were on board, yet no one had taken the seats underneath the bag. The officers then asked Defendant for permission to search the bag. Defendant said that it was not his bag so he did not care. Upon searching the bag the officers found a controlled substance which later proved to be 123.35 ounces of cocaine base.[1]

Up to this point, the officers had probably not done anything impermissible. If the bag

---

1. In the argument section of his brief defendant, with commendable candor, makes the following concession:

After their discovery, the officers asked Defendant to step off the bus for further questioning. When outside, Carrington requested Defendant's permission to search his person. Defendant agreed to the search, and the officer found marijuana in his pockets. At that point Carrington arrested Defendant.

Defendant was escorted inside the bus terminal where his *Miranda* rights were read to him. The officers told Defendant that it was possible to determine if the hair in the hair brush inside the bag was his. Defendant then admitted the bag belonged to him and said he was delivering the cocaine base, worth $6,000, to a man in St. Louis.

At trial, Defendant testified that the bag did not belong to him and denied that he told the officers it did. He also denied that he possessed the cocaine base.

In overruling Defendant's motion to suppress, the trial court concluded that Defendant was arrested on the bus immediately after the officers discovered cocaine base in the travel bag. The trial court's order contains the following well-reasoned findings:

> During the delayed departure, all passengers were interrogated on the bus about the carryon bags on the bus. The bus departure was delayed to accommodate the Officers desire to determine if Defendant had a carryon bag. After the interrogation, one carryon bag in the bus was left unclaimed and Defendant had not claimed any bag. At that point an Officer placed the unclaimed bag near Defendant and asked him for permission to search the bag. The Defendant answered, "go ahead, it is not my bag."

A search of the bag produced what appeared to the Officers to be "crack cocaine base", a controlled substance. Although, the Officers told Defendant he was not under arrest, Defendant was asked to step off the bus, which was then already delaying its departure with all on board. The Defendant complied and stepped off the bus.

Again, the Officer's request, coming immediately after the discovery of contraband in a bag placed near Defendant, can only be interpreted by reasonable persons in the position of Defendant as a direction of law enforcement officers and not as something that could be resisted or refused. The Court concludes the Defendant was taken into custody at that point and was under custodial arrest thereafter.

The facts known to the Officers at that time were general facts applicable to all bus passengers, except the information that Defendant was making the lengthy trip without baggage. They had an unclaimed bag which they now knew contained contraband and a passenger who under all reasonable circumstances would travel with a bag and did not claim any bag.

The issue is whether or not the additional information, of a lengthy bus trip without baggage, was sufficient with the other information known to the Officers for probable cause to make the arrest. The Court is not precluded from a finding of probable cause by its belief the Officers did not believe they had probable cause for the arrest or by the statements of the Officers to Defendant that he was not under arrest.

The Court concludes there was probable cause for the arrest of the Defendant on the bus, that the search of the Defendant (during which marijuana was discovered) was incident to the arrest and that the statements made thereafter were made voluntarily after receiving the warnings required by the Miranda decision.

■ Defendant mistakenly views his entire encounter with the officers in light of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny (police officers may temporarily stop a person for investigatory purposes if the officer has a reasonable and articulable suspicion that the person is engaged in criminal activity). Clearly, a *Terry* stop is investigatory in na-

---

belonged to [defendant], he abandoned it by telling the officers it was not his. If it did not belong to him, he was not aggrieved by its search. Furthermore, the brief detention to

which they had so far subjected him was clearly a reasonable and minimal request for information.

ture; it is not an arrest. *State v. Fernandez,* 691 S.W.2d 267, 269 (Mo. banc 1985). *Terry* recognizes the need for intermediate stops even when there is no probable cause for arrest. *Id.* In this case, the trial court concluded that the officers had probable cause to arrest Defendant when cocaine base was found in the bag near him and at that point Defendant was under arrest. If the trial court is correct, analyzing Defendant's claim of error in the context of *Terry* is unnecessary.

As noted, our review is limited to a determination of whether there was sufficient evidence to support the order denying Defendant's suppression motion. Thus, the real issue before us is whether Hicks had probable cause to arrest Defendant after discovery of the cocaine base. If he did, Defendant's statements were admissible because Defendant concedes he was read his *Miranda* rights before making any incriminatory statements and at trial Defendant admitted he understood his right to remain silent and his right to counsel.

■ If based on probable cause to believe a felony has been committed, a police officer may make a warrantless arrest. *State v. Anderson,* 886 S.W.2d 742, 745 (Mo.App. 1994). "Probable cause to arrest exists where the arresting officer has knowledge of facts and circumstances based on reasonably trustworthy information which would warrant belief by a reasonably cautious person that the person to be arrested is committing or has committed an offense." *Id.* The essence of all definitions of "probable cause" is a reasonable ground for belief of guilt. *Wilcox v. Director of Revenue,* 842 S.W.2d 240, 242 (Mo.App.1992).

■ At the time the court concluded Defendant was arrested, Hicks was aware of the following facts and circumstances:

(1) Defendant was traveling on a bus Hicks knew to be regularly used by drug couriers to transport illegal drugs from Los Angeles, a source area for drug trafficking operations. Defendant's bus ticket showed that he boarded the bus in the Los Angeles area.

(2) Defendant paid for his ticket in cash, a common characteristic of drug couriers, and was wearing a pager for no obvious legitimate reasons.

(3) Defendant appeared to be untruthful in attempting to conceal the true purpose of his trip by claiming he was going to visit his mother but he did not know her address or phone number.

(4) Defendant appeared to be concealing his identity when he failed to produce any identification.

(5) Defendant appeared extremely nervous when Hicks first questioned him because his hands were shaking, his voice was breaking, and he was breathing rapidly.

(6) Although Defendant was making an almost 2,000 mile trip, he claimed to have no baggage.

(7) The unclaimed bag was located directly across the aisle from Defendant above empty seats. Defendant was the nearest passenger to the bag.

(8) Hicks had good cause to believe that Defendant was untruthful when he claimed the bag belonged to "a couple of white dudes" who never returned to their seats. Nothing indicated that any passengers failed to return to their seats.

After no one claimed the bag, and considering Defendant's statements, Hicks knew that only two possibilities existed. Either (1) the two white men referred to by Defendant abandoned $6,000 worth of cocaine base and fled the bus undetected or (2) the bag belonged to Defendant. Probable cause to arrest must be "determined by practical considerations of everyday life on which reasonable persons act, and not on the hindsight of legal technicians." *State v. Fain,* 679 S.W.2d 419, 423 (Mo.App.1984).

From the facts and circumstances of this case, a reasonably cautious person would believe that Defendant had committed a drug-related offense. A case finding probable cause on facts similar to those here is *United States v. Tingling,* 656 F.Supp. 635 (W.D.Mo. 1987), *aff'd,* 840 F.2d 567 (8th Cir.1988), *cert. denied,* 488 U.S. 941, 109 S.Ct. 364, 102 L.Ed.2d 354 (1988) (officer had probable cause to arrest defendant for drug law viola-

tion following arrival on late night flight which had become popular with drug traffickers).

The judgment is affirmed.

SHRUM, C.J., and FLANIGAN, J., concur.