**STATE of Missouri, Respondent,**

v.

**John C. BURKE, Appellant.**

**John C. BURKE, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 18181, 18947.

Missouri Court of Appeals,
Southern District,
Division Two.

July 8, 1994.

Motion for Rehearing or Transfer
Denied July 25, 1994.

---

John C. Burke, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jennifer A. Glancy, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Presiding Judge.

A jury found defendant John Burke guilty of possessing more than 35 grams of marijuana, and he was sentenced to seven years' imprisonment and a $5,000 fine. Defendant appeals, and that appeal is Case No. 18181. After the jury trial, defendant filed a motion under Rule 29.15,[1] seeking relief from the conviction. That motion was denied without evidentiary hearing. Defendant appeals from that denial, and that appeal is Case No. 18947. The appeals have been consolidated and will be dealt with separately in this opinion.

### Case No. 18181

Defendant does not challenge the sufficiency of the evidence to support the verdict. In addition to its formal portions, the information charged that on December 14, 1990, in Greene County, the defendant "knowingly possessed more than 35 grams of marijuana, a controlled substance, knowing of its presence and illegal nature."

---

**1.** Except where otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R.

On December 14, 1990, at approximately 5 p.m., defendant was the driver and sole occupant of a Plymouth van, a rental vehicle, which was traveling east on I–44 at a speed in excess of the posted speed limit. The van was stopped by Trooper Timothy Russett. In the presence of defendant, and with his consent, Trooper Russett searched the vehicle and recovered approximately 35 pounds of marijuana from its interior.

By pretrial motion to suppress, renewed during the course of the trial, defendant sought to challenge the constitutionality of the search of the van and the seizure of the marijuana. The trial court overruled defendant's objections and received the challenged items into evidence.

Defendant's first point is that the trial court erred in denying his motion to suppress "because defendant did not voluntarily consent to the search of his van by Trooper Russett and there was no probable cause for the search in that defendant signed the written consent to search form 'CF John C. Burke' meaning his consent was given under protest and not voluntarily; therefore the evidence was not admissible and defendant was prejudiced in that he would not have been convicted if the motion to suppress had been properly sustained by the court."

▉ Appellate review of a ruling on a motion to suppress is limited to a determination of sufficiency of the evidence to sustain the trial court's finding. *State v. Villa–Perez,* 835 S.W.2d 897, 902[9] (Mo. banc 1992). "[I]n so doing, we examine all circumstances and the total atmosphere of the case, and defer to the trial court's vantage point for assessing the credibility of the witnesses and weighing the evidence." *Id.* "Only if the trial court's judgment is clearly erroneous will an appellate court reverse." *State v. Milliorn,* 794 S.W.2d 181, 183[5] (Mo. banc 1990). If the trial court's ruling "is plausible in light of the record viewed in its entirety," this court "may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 184.

"The Fourth Amendment ... merely proscribes those [searches] which are unreasonable.... Thus, we have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness— what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno,* 500 U.S. at 250, 111 S.Ct. at 1803–4.

At the hearing on the motion to suppress, Trooper Russett testified that after he had stopped defendant's vehicle for speeding he observed that it was a rental vehicle. Russett saw that a strip of duct tape concealed a bumper sticker which identified the vehicle as a rental vehicle and concealed the inventory number or "bar code" of the vehicle. Defendant had a New York driver's license but the vehicle was registered in New Mexico. When Russett explained the speeding violation to defendant, he observed that defendant was unusually nervous, his hands were trembling, and his voice was cracking. Defendant said he had been in New Mexico to visit friends and was returning to his home in New York. Russett thought that was unusual because the Plymouth was a "one-way rental" from New Mexico to New York.

Russett asked defendant whether he would consent to a search of the van and its contents, and defendant told Russett that Russett could do so. Russett produced, and filled out, a "written consent" for defendant to sign. Defendant signed the form and opened the door of the van. Russett's search uncovered approximately 35 pounds of marijuana.

▉ Testifying in his own behalf, defendant said, "[Trooper Russett] produced the form which I signed with the CF, meaning that it was under protest under the threat of force or under duress."

Under cross-examination by the prosecutor, defendant gave the following testimony:

Q. Now you indicated when you testified here just a second ago, that you did sign,

quote CF, before your signature on the consent form, correct?

A. C period F period.

Q. Mm-hmm. And in Latin that means?

A. In Latin that means, let me tell you exactly, coactus feci, meaning—

Q. And you'd agree with me there aren't that many Latin scholars that you've met in your lifetime, fair statement?

A. Well, no.

Q. In fact, you told the trooper at the time—

A. Not many people know that.

Q. Fair enough, and you told the trooper, after you had already been arrested and taken back to Troop D, that not many people know that?

A. That's true.

Defendant argues that his inclusion of the initials "CF" before his signature on the consent form invalidated his consent. This court rejects that argument. Trooper Russett testified that defendant consented to the search, signed a consent form, and opened the door of the van. Under the *Jimeno* standard of objective reasonableness, a reasonable person would have understood, by the exchange between the trooper and defendant, that defendant consented to the search. That consent was unaffected by defendant's conduct in writing two letters, purportedly constituting the initial letters of an obscure Latin phrase, on the consent form and not mentioning same. Defendant's first point has no merit.

■ Defendant's second point is that the trial court erred in improperly restricting his voir dire examination of the prospective jurors, "in that it was very difficult for defendant to determine whether [prospective] jurors had bias or prejudice since the court prevented him from asking further questions."

"The purpose of voir dire is to enable each party to participate in selection of a fair and impartial jury and to that end, wide latitude is allowed in examination of the panel. During voir dire the defendant should be permitted to develop not only facts which might manifest bias and form the basis of a challenge for cause, but also such facts as might be useful to him in detecting the possibility of bias and intelligently utilizing his peremptory challenges. Nevertheless, the examination of jurors as to their qualifications is conducted under the supervision of the trial court and the nature and extent of the questions counsel may ask are discretionary with that court. Rulings of the trial court during voir dire will be disturbed on appeal only when the record shows an abuse of discretion, and a real probability of injury to the complaining party." *State v. Smith*, 649 S.W.2d 417, 428[15–17] (Mo. banc 1983) (citing authorities).

Throughout these proceedings, defendant has acted as his own counsel, although in the trial court counsel selected by defendant was present "for advice." Defendant informed the trial court that he wanted to conduct his own defense and that the attorney's only role was to give him advice. The trial court informed the defendant of the perils of self-representation. At the outset of the trial, the jury was informed that defendant had retained counsel to give him advice but had elected to represent himself and present his own case.

The defense portion of the voir dire examination was conducted by defendant himself. He told the veniremen that he went to college and got a Bachelor of Fine Arts degree. His voir dire examination commences on page 103 of the transcript and ends on page 138.

Among the questions posed by defendant were the following: "Have you ever known the government to lie?"; "Do you believe you have a Constitution and a Bill of Rights here in Missouri as well as in the United States?"; "Do you know that marijuana was once the principal agricultural commodity of Missouri?"; "Have you heard of the War of 1812 [where] British ships stopped United States ships carrying marijuana?"; "Do you know that the farmers in this state used to be prosperous and over the past 10 years many small farms have been going bankrupt?"; "Did you know that it was our constitutional right, just as it was for the farmers in Ken-

tucky and Missouri, to possess, cultivate and utilize medicinal herbs?"; "Do you know what is happening in Los Angeles?"; "Do you know it is my basic right to possess my personal property?"

Defendant also made rambling remarks concerning Thomas Jefferson, Justice William O. Douglas, and several amendments to the United States Constitution. When defendant began what appeared to be a dissertation upon the Ninth Amendment, the trial court concluded the voir dire.

The trial court gave defendant wide latitude in examining the veniremen. Defendant did not inform the trial court of any additional questions he desired to ask. The overall purpose of defendant's questioning was to induce the veniremen to believe that possession of marijuana should not be unlawful. The record shows that the trial court did not abuse its discretion in calling the voir dire to a halt at the point it did. The record does not show a "real probability of injury" to defendant. Defendant's second point has no merit.

Defendant's third point is that the trial court, at the arraignment, improperly entered for him a plea of not guilty. This point has not been preserved for appellate review. Contrary to the requirements of Rule 30.06(c), the statement of facts portion of defendant's brief does not contain any description of the circumstances attendant upon the entry of defendant's plea. The argument in support of the third point makes no mention of the happenings at his arraignment. This court, in its discretion under Rule 30.20, has reviewed the record for possible plain error.

■ The arraignment took place two months prior to the trial and was conducted by Judge Don Bonacker. Defendant appeared in person and with his attorney. The attorney informed the court that defendant asked him "to withdraw as his attorney but to remain of counsel on this case." During questioning by the court, defendant stated that he was 41, that he was a college graduate, that he had never been treated for mental illness and had not been under the care of a doctor for five years. The court read the information to the defendant and asked him if he understood the charges. Defendant said that he did not understand but that he understood what the court had read. Asked how he pleaded, defendant replied, "Well, I am pleading that I do not understand the nature of it and because of the charges against me." The court said, "The court will enter a plea of not guilty for the defendant."

"If a defendant refuses to plead ..., the court shall enter a plea of not guilty." Rule 24.02(a). The same language is in Rule 11(a) F.R.Crim.P. "The effect of the refusal of a defendant to plead when arraigned is too well known to require discussion. A not guilty plea is entered for him and the case proceeds." *Ruckle v. Warden, Md. Penitentiary,* 335 F.2d 336, 338 (4th Cir.1964). Defendant was aware of the charges against him. His responses to the court constituted a refusal to plead. The court properly entered a plea of not guilty.

The judgment from which appeal was taken in Case No. 18181 is affirmed.

### Case No. 18947

■ This is defendant's appeal from the trial court's denial, without evidentiary hearing, of his Rule 29.15 motion seeking relief from the conviction. Defendant filed no brief with reference to the denial of his Rule 29.15 motion and made no claim of error with reference thereto in his brief in Case No. 18181. The same situation arose in *State v. Mayo,* 784 S.W.2d 897[1] (Mo.App.1990), where the court said: "We dismiss his Rule 29.15 motion appeal by reason of abandonment." To the same effect see *State v. Henderson,* 824 S.W.2d 445, 447[1] (Mo.App. 1991). The appeal in Case No. 18947 is dismissed.

PREWITT and CROW, JJ., concur.