**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**August 14, 2023**

# In the Court of Appeals of Georgia

A23A1131. DAVIS v. THE STATE.

HODGES, Judge.

Less than two weeks after entering a plea of guilty to one count of possession of methamphetamine (OCGA § 16-13-30 (a)),[1] Frances Davis summarily moved to withdraw her guilty plea. The Superior Court of Barrow County denied Davis' motion, and she appeals, arguing that her guilty plea was not knowingly and voluntarily entered. Finding no error, we affirm.

The record demonstrates that Barrow County officers obtained arrest warrants against Davis, and that Davis posted bond, in October 2020. The district attorney

---

[1] As a result of the plea negotiations, the State disposed of Davis' additional charges of possession of hydrocodone, possession of marijuana (less than an ounce), possession of drug related objects, and failure to maintain lane by an order of nolle prosequi.

filed an accusation against Davis in April 2021, but Davis failed to appear at a September 6, 2022 court date[2] and, as a result, the trial court issued a bench warrant against Davis. The record suggests that Davis was jailed on the bench warrant when she appeared at a September 26, 2020 court date.

On October 26, 2020, Davis completed a guilty plea waiver form with her then-counsel in preparation for a guilty plea hearing on October 27, 2020. During her guilty plea hearing, Davis stated that she was aware of her right to a trial by jury, her right to confront her accusers, and her privilege against self-incrimination, and that she would waive those rights by entering a plea of guilty. Davis also affirmed that she understood the charge against her, that she had no questions about the charge, and that she wanted to plead guilty because she actually committed the act for which she was charged. On the guilty plea waiver form, Davis specifically indicated that she did not want to have a jury trial and that no one had promised her anything, threatened her, or used force against her to cause her to plead guilty. As a result, the trial court

[2] In pro se filings and during the hearing on her motion to withdraw her guilty plea, Davis alleged that her then-counsel failed to notify her of the need to be present for the September 6, 2020 court date.

found that Davis' negotiated[3] plea was freely and voluntarily entered. At the conclusion of the hearing, Davis asked, "[w]ill I be released today?" Her counsel replied, "[y]es."

Less than two weeks later, Davis filed a summary motion to withdraw her guilty plea "to correct a manifest injustice . . . and because said plea was not voluntarily, knowingly, and intelligently made." During a hearing on Davis' motion, Davis acknowledged that "the only reason [she] answered the questions the way [she] did was so that [she] could get out of jail[.]" At the conclusion of the hearing, the trial court denied Davis' motion, finding that the plea was freely and voluntarily entered and noting that "the desire to avoid incarceration, or to shorten a term of incarceration, . . . does not mean that a plea is not freely and voluntarily entered." This appeal follows.

In a single enumeration of error, Davis contends that her guilty plea was not knowingly and voluntarily entered because "[s]he always wanted a trial" and that it

---

[3] In her brief to this Court, Davis nominally contends that her plea was non-negotiated because she "was advised in writing and in her plea that the Court could sentence her up to the maximum punishment. . . ." Rather than being a hallmark of a non-negotiated plea, this is a suggested requirement for *any* guilty plea. See Uniform Superior Court Rule 33.8 (D) (3) ("The judge should not accept a plea of guilty or nolo contendere from a defendant without first . . . [i]nforming the defendant on the record . . . of the maximum possible sentence on the charge[.]").

3

was her understanding that, after being jailed on a bench warrant, "the only way she would ever be released was through the guilty plea she entered." We are not persuaded.

"Once a sentence has been entered, a guilty plea may be withdrawn only to correct a manifest injustice[,]" such as the denial of effective assistance of counsel or the entry of a plea involuntarily or without an understanding of the nature of the charges. *Norwood v. State*, 311 Ga. App. 815, 816 (717 SE2d 316) (2011). "A ruling on a motion to withdraw a guilty plea lies within the sound discretion of the trial court, and we will not disturb the ruling absent a manifest abuse of that discretion." (Citation omitted.) *Wilson v. State*, 302 Ga. App. 433, 433-434 (1) (691 SE2d 308) (2010); see also *Norwood*, 311 Ga. App. at 816. Moreover, "[d]uress is a question of fact for the trial court to resolve, whose decision we will only reverse if it constitutes an abuse of discretion." (Citation and punctuation omitted.) *Schlau v. State*, 282 Ga. App. 460, 462 (2) (638 SE2d 895) (2006).

Under Georgia law,

[w]hen a defendant challenges the validity of [her] guilty plea, the State bears the burden of showing that the plea was entered voluntarily and intelligently and that the defendant had an understanding of the nature of the charges against him and the consequences of the plea. The State

4

may meet its burden in two ways: (1) showing on the record of the guilty plea hearing that the defendant was cognizant of all the rights [she] was waiving and the possible consequences of [her] plea; or (2) filling a silent record by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary.

(Citation omitted.) *Zellmer v. State*, 273 Ga. App. 609, 611 (2) (615 SE2d 654) (2005). It is well settled that the proper entry of a guilty plea "involves the waiver of three federal constitutional rights: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers, and the trial court has a duty to ensure that the defendant understands the constitutional rights being waived." (Citation omitted.) *State v. Cooper*, 281 Ga. 63, 64 (1) (636 SE2d 493) (2006).

Here, the record includes a transcript of the guilty plea hearing as well as a written plea waiver form. In both, Davis confirmed that she was aware of her rights to a trial by jury and to confront her accusers as well as the privilege against self-incrimination, and that she would waive those rights by entering a plea of guilty. Moreover, Davis averred that she understood the charge against her, that she committed the act for which she was charged, and that that was why she wanted to plead guilty. Davis also specifically indicated on the written form that she did not

5

want to have a jury trial. As a result, the trial court found that Davis' plea was freely and voluntarily entered.

As for her reasoning that her plea was not voluntarily entered, Davis stated that she "was in handcuffs in custody after [she] had been kidnaped and falsely arrested and falsely imprisoned by this court system." Davis' characterization is based upon her imprisonment on a bench warrant following a failure to appear at a prior hearing. Nevertheless, any feeling of duress or unease that Davis experienced "was due to the circumstances in which [she] found [herself][.]" *Zellmer*, 273 Ga. App. at 61 (2) (I accidentally deleted the 2 and I don't know how to undo it).[4]

---

[4] A portion of Davis' argument that she entered her guilty plea under duress focuses on her use of the letters "V. C." — an abbreviation for *vi coactus*, "a Latin phrase meaning 'having been forced' or 'having been compelled'" — immediately prior to her signature on her guilty plea and sentence. *Hudson v. Foxx*, 2021 U. S. Dist. LEXIS 235481, *10 (I) (N. D. Ill. 2021). Davis herself characterized the maneuver as a proverbial "Get Out Of Jail Free card," saying that she would gain her freedom by entering a guilty plea and that "after [she] was free, [she] could come back and ask for the guilty plea to be withdrawn." During the hearing on Davis' motion to withdraw her guilty plea, the trial court aptly described Davis' charade as "some code used to more or less perpetrate a fraud on the Court." Though limited in number, we join the reported cases from foreign jurisdictions that have squarely rejected this novel use of "an obscure Latin phrase" as an attempted shield from liability. *State v. Burke*, 896 SW2d 33, 36 (Mo. App. 1994). To the contrary, "criminal and constitutional law does not allow a defendant to make solemn undertakings in open court and under oath and then avoid them by figuratively crossing [her] fingers behind [her] back." *Merrick v. Warden*, 2021 U. S. Dist. LEXIS 247834, *4 (S. D. Ohio 2021); see also *Hudson*, 2021 U. S. Dist. LEXIS 235481, *12

In sum, we conclude that the trial court did not abuse its discretion in denying Davis' motion to withdraw her guilty plea. Therefore, we affirm the trial court's judgment.

*Judgment affirmed. Mercier, C. J., and Miller, P. J., concur.*

---

- *13.