STATE of Missouri, Plaintiff–Respondent,

v.

Brook Alan MEINHARDT, Defendant–Appellant.

Brook Alan MEINHARDT, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 18950, 19820.

Missouri Court of Appeals, Southern District, Division One.

June 8, 1995.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Traci J. Sanders, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

A jury found defendant guilty of robbery in the first degree, assault in the first degree, and two counts of armed criminal action, and he was sentenced to consecutive terms of imprisonment totaling 90 years. Defendant appeals, and that appeal is Case No. 18950.

After the jury trial, defendant filed a motion under Rule 29.15,[1] seeking relief from

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1994, V.A.M.S.

the conviction. The motion was denied after an evidentiary hearing. Defendant appeals from that denial, and that appeal is Case No. 19820. The appeals have been consolidated and will be dealt with separately in this opinion.

## No. 18950

Defendant's sole point is that the trial court erred in failing to suppress a statement given by defendant to Detectives Mark Hall and Gary McMurtry on July 14, 1992, because the statement was taken in violation of defendant's right to counsel and his privilege against self-incrimination, as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and Art. I, §§ 18(a) and 19 of the Missouri constitution, "in that the state filed its formal complaint against defendant on July 14, 1992, thus invoking his right to counsel and the state did not prove that Hall and McMurtry initiated the interrogation of defendant before the formal adversarial process was commenced by the filing of said complaint."

On July 14, 1992, the state filed an amended complaint, charging defendant with the four offenses of which he was later convicted. An earlier complaint had charged only a codefendant with the same offenses.

Also on July 14, 1992, defendant, after receiving the *Miranda* warnings, was interviewed by detectives Gary McMurtry and Mark Hall and gave the statement which was the subject of defendant's motion to suppress. The statement was incriminating and dealt with the charged offenses. After an evidentiary hearing, the trial court overruled the motion to suppress. Later, at the jury trial, over defendant's renewed objections, the court admitted into evidence the detectives' testimony concerning the contents of defendant's oral statement.

The testimony of Detective Hall, both at the suppression hearing and at the trial, included the following: "I talked to defendant on July 14, accompanied by Detective McMurtry. Defendant had not requested the interview. I told him that before I could discuss anything involving the case I would have to give him his rights. Exhibit 1 is a 'Miranda waiver form,' which defendant signed after reading it. Defendant said he understood his rights. At no time during the interview did defendant say, 'I don't want to talk to you, I want to talk to my attorney,' or anything to that effect. Defendant never invoked his right to an attorney. Defendant had no problem in talking with me. I did not ask him if he was represented by counsel. I asked him about the facts of the case. There were no questions which he refused to answer. He said he had eleventh grade education."

McMurtry's testimony concerning the interrogation was essentially the same as that of Hall. McMurtry said: "Before the interview commenced, we identified ourselves to defendant and told him we had some questions but before we did that we had to advise him of his *Miranda* rights. At no time did defendant say he did not want to talk or that he wanted to talk to an attorney or that he ever invoked his rights in any form or fashion. Defendant did not mention any attorney at all. After defendant signed Exhibit 1, he said he wanted to talk with us, and did talk with us. Defendant freely gave his statement to us at the time."

■ At the hearing on defendant's motion to suppress, the state has the burden to show by a preponderance of the evidence that the motion to suppress should be overruled. § 542.296.6; *State v. Franklin*, 841 S.W.2d 639, 644[7] (Mo. banc 1992); *State v. Pate*, 859 S.W.2d 867, 870[2] (Mo.App.1993). Appellate review of a ruling on a motion to suppress is limited to a determination of sufficiency of the evidence to sustain the trial court's finding. *State v. Villa–Perez*, 835 S.W.2d 897, 902[9] (Mo. banc 1992). "[I]n so doing, we examine all circumstances and the total atmosphere of the case, and defer to the trial court's vantage point for assessing the credibility of the witnesses and weighing the evidence." *Id.* "Only if the trial court's judgment is clearly erroneous will an appellate court reverse." *State v. Milliorn*, 794 S.W.2d 181, 183[5] (Mo. banc 1990). If the trial court's ruling "is plausible in light of the record viewed in its entirety," this court "may not reverse it even though convinced that had it been sitting as the trier of fact, it

would have weighed the evidence differently." *Id.* at 184.

■ The Fifth Amendment's privilege against self-incrimination and the Sixth Amendment's right to counsel both apply to the states as a part of the due process guarantee of the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

Cases dealing with the relevant portions of the Fifth Amendment, ("nor shall [any person] be compelled in any criminal case to be a witness against himself"), and the Sixth Amendment, ("In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense"), include *Davis v. U.S.,* 512 U.S. ——, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); *Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988); and *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

In *Davis,* the Court held that a suspect is entitled to the assistance of counsel during custodial interrogation but must invoke that right by clearly requesting an attorney, and an ambiguous or equivocal reference by the suspect to an attorney does not require cessation of questioning.

In *McNeil,* an accused, in jail on a charge of armed robbery and who was represented by counsel on that charge, was questioned by police about a murder. He was advised of his *Miranda* rights, waived them, and made incriminating statements concerning the murder. The Court held that the accused's invocation of his Sixth Amendment right to counsel in the robbery case did not constitute an invocation of his right to counsel, derived by *Miranda* from the Fifth Amendment's guarantee against compelled self-incrimination, with respect to the murder.

In *Patterson,* the Court held that the fact that defendant's Sixth Amendment right to counsel came into existence when he was indicted for murder did not preclude admission into evidence of statements (concerning the murder) made by him to police during custodial interrogation where defendant waived his rights under *Miranda.* The post-indictment questioning did not violate his Sixth Amendment right to counsel.

*Jackson* held that after the Sixth Amendment right to counsel attaches *and is invoked,* any statements obtained from the accused during subsequent police-initiated custodial questioning regarding the charge at issue are inadmissible even if the accused purports to waive his rights.

■ The Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings. Before proceedings are initiated, a suspect in a criminal investigation has no constitutional right to the assistance of counsel. *Davis,* 512 U.S. at ——, 114 S.Ct. at 2354[1]. A suspect subject to custodial interrogation, however, has the right to consult with an attorney and to have counsel present during questioning, and police must explain this right to him before questioning begins. *Miranda v. Arizona,* 384 U.S. 436, 469–473, 86 S.Ct. 1602, 1625–1627, 16 L.Ed.2d 694 (1966). *Davis,* 512 U.S. at ——, 114 S.Ct. at 2354.

The right to counsel recognized in *Miranda* requires the special protection of the knowing and intelligent waiver standard. "If the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him. But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis,* 512 U.S. at ——, 114 S.Ct. at 2354–2355 (citations omitted).

■ A suspect *who has invoked* the right to counsel cannot be questioned regarding *any* offense unless an attorney is actually present, *Davis,* 512 U.S. at ——, 114 S.Ct. at 2355 (emphasis added). This prohibition on further questioning—like other aspects of *Miranda*—is not itself required by the Fifth Amendment's prohibition on coerced confessions, but is justified only by reference to its prophylactic purpose. *Id.* The suspect must unambiguously request counsel. The suspect must articulate his desire to have counsel

present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the suspect's statement fails to meet the requisite level of clarity, the officers are not required to stop questioning the suspect. *Id.* If the suspect's statement is ambiguous or equivocal, the officers have no obligation to stop questioning him. *Davis,* 512 U.S. at ——, 114 S.Ct. at 2356. In *Davis,* the Court saw "no reason to disturb" the conclusion of the lower courts that the suspect's statement—"Maybe I should talk to a lawyer"—was not a request for counsel, and thus the officers were not required to stop the questioning.

■ Once the right to counsel has attached and *has been invoked,* any subsequent waiver during a police-initiated interview is ineffective. *McNeil,* 501 U.S. at 178–79, 111 S.Ct. at 2209; *State v. Parker,* 886 S.W.2d 908, 918[10] (Mo. banc 1994). The Sixth Amendment right, however, is offense-specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *McNeil,* 501 U.S. at 175, 111 S.Ct. at 2207[1].

■ The *Miranda* right to counsel during custodial interrogation was supplemented by the guarantee established in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Once a suspect asserts the right, not only must the current interrogation cease, but he may not be approached for further interrogation regarding *any* offense until counsel has been made available to him, which means that counsel must be present. *McNeil,* 501 U.S. at 176–77, 111 S.Ct. at 2208.

The purpose of the *Miranda–Edwards* guarantee derived from the Fifth Amendment—and hence the purpose of invoking it—is to protect the suspect's desire to deal with the police only through counsel. This is in one respect narrower than the interest

protected by the Sixth Amendment guarantee (because it relates only to custodial interrogation), and in another respect broader, (because it relates to interrogation regarding *any* suspected crime and attaches whether or not adversary criminal proceedings have been initiated). *McNeil,* 501 U.S. at 178–79, 111 S.Ct. at 2209.

■ Defendant's argument is: The filing of the amended complaint, in which defendant was first named as defendant, took place on July 14; the Sixth Amendment right to counsel attached on the filing of the amended complaint; the interrogation took place on July 14; "The state did not prove that the complaint was filed *after* Hall and McMurtry initiated the interrogation of defendant on July 14, 1992. Therefore, the trial court erred in overruling defendant's motion to suppress his July 14, 1992, statement."

Defendant quotes the following language from *McNeil,* 501 U.S. at 174–76, 111 S.Ct. at 2207: "[O]nce this [Sixth Amendment] right to counsel has attached and has been invoked, any subsequent waiver during a *police-initiated* custodial interview is ineffective." The flaw in defendant's contention is that he did not, at any time prior to the completion of the interview, *invoke* his Sixth Amendment right to counsel. The facts and holding in *Patterson,* as will be shown, invalidate defendant's point.

Rule 22.01 reads: "Felony proceedings may be initiated by complaint filed in any court having original jurisdiction to try misdemeanors, or by indictment." The amended complaint, filed July 14, initiated this felony proceeding against defendant. The sequence of the events of July 14—the filing of the amended complaint and the custodial interrogation—is of no significance. The same result obtains if either preceded the other, or if they occurred simultaneously.

In *Patterson,* defendant was indicted for murder. A police officer, after the indictment, gave defendant a *Miranda* waiver form, which defendant signed.[2] Defendant

---

**2.** One factual difference between *Patterson* and this case is that the officers in *Patterson* told

defendant he had been indicted. Here, the officers did not tell defendant that the amended

then gave a lengthy statement to the officer concerning the murder. The trial court denied defendant's motion to suppress his statements.

On appeal, defendant-petitioner argued that he had not knowingly and intelligently waived his Sixth Amendment right to counsel before he gave his uncounseled post-indictment confession. He contended that while the warnings he received were adequate for the purpose of protecting his Fifth Amendment rights as guaranteed by *Miranda*, they did not adequately inform him of his Sixth Amendment right to counsel. These arguments were rejected.

The court said, at 2393–2394:

"Petitioner's first claim is that because his Sixth Amendment right to counsel arose with his indictment, the police were thereafter barred from initiating a meeting with him. He equates himself with a preindictment suspect who, while being interrogated, asserts his Fifth Amendment right to counsel; under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), such a suspect may not be questioned again unless he initiates the meeting.

*"Petitioner, however, at no time sought to exercise his right to have counsel present.* The fact that petitioner's Sixth Amendment right came into existence with his indictment, *i.e.,* that he had such a right at the time of his questioning, does not distinguish him from the preindictment interrogatee whose right to counsel is in existence and available for his exercise while he is questioned. Had petitioner indicated he wanted the assistance of counsel, the authorities' interview with him would have stopped, and further questioning would have been forbidden (unless petitioner called for such a meeting)." (emphasis added).

At 2394 the court said:

"Preserving the integrity of an accused's choice to communicate with police only through counsel is the essence of *Edwards*

and its progeny—not barring an accused from making an *initial* election as to whether he will face the State's officers during questioning with the aid of counsel, or go it alone. If an accused 'knowingly and intelligently' pursues the latter course, we see no reason why the uncounseled statements he then makes must be excluded at his trial."

At 2395 the court said:

"[T]he key inquiry in a case such as this one must be: Was the accused, who waived his Sixth Amendment rights during postindictment questioning, made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel? *In this case, we are convinced that by admonishing petitioner with the Miranda warnings, respondent has met this burden and that petitioner's waiver of his right to counsel at the questioning was valid."* (emphasis added).

At 2397 the court said:

"As a general matter, then, an accused who is admonished with the warnings prescribed by this Court in *Miranda,* 384 U.S., at 479, 86 S.Ct., at 1630, has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one."

Also at 2397 the court said:

"While our cases have recognized a 'difference' between the Fifth Amendment and Sixth Amendment rights to counsel, and the 'policies' behind these constitutional guarantees, we have never suggested that one right is 'superior' or 'greater' than the other, nor is there any support in our cases for the notion that because a Sixth Amendment right may be involved, it is more difficult to waive than the Fifth Amendment counterpart."

At 2398 the court said:

*"[I]t is our view that whatever warnings suffice for Miranda's purposes will also be sufficient in the context of postindictment*

complaint had been filed. In view of the holding in *Patterson,* this court does not regard this difference as significant.

*questioning.* The State's decision to take an additional step and commence formal adversarial proceedings against the accused does not substantially increase the value of counsel to the accused at questioning, or expand the limited purpose that an attorney serves when the accused is questioned by authorities. With respect to this inquiry, we do not discern a substantial difference between the usefulness of a lawyer to a suspect during custodial interrogation, and his value to an accused at *postindictment* questioning." (emphasis added).

The court held that petitioner was given the *Miranda* warnings, his waiver of his Sixth Amendment rights was knowing and intelligent, and the trial court properly admitted his confession into evidence.

Defendant makes no claim that his rights under the Missouri constitution are more extensive than his rights under the Constitution of the United States.

Defendant, prior to the custodial interrogation, was given the *Miranda* warnings. He at no time invoked his right to have counsel present. Defendant, who waived his Sixth Amendment rights during post-complaint questioning, was made sufficiently aware, by the prior *Miranda* warnings, of his right to have counsel present during the questioning and of the possible consequences of a decision to forgo the aid of counsel. His waiver was a knowing and intelligent one. The filing of the amended complaint did not substantially increase the value of counsel to him at questioning or expand the limited purpose that an attorney serves when a defendant is questioned by authorities. The trial court properly permitted defendant's statement to be used against him. Defendant's point has no merit.

The judgment is affirmed.

### No. 19820

 Movant's sole point is that he was entitled to relief on his Rule 29.15 motion, and the trial court erred in ruling otherwise, in that he was denied his right to effective assistance of counsel, as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and Art. I, §§ 10 and 18(a) of the Missouri constitution, "in that movant alleged grounds for

relief which required his testimony, and he requested motion counsel call him as a witness, but motion counsel 'elected and made the decision not to call movant as a witness.' Movant could not satisfy his burden of proving his allegations by a preponderance of the evidence without being able to present his own testimony."

Near the outset of the evidentiary hearing, movant's counsel made the following statement to the court:

"I—just a short record on the fact that normally I would have had my client present here. I have had the opportunity to talk with him. And although it is not—it was not his—his agreement not to be here because of some concern that I had in the case, I elected and made the decision not to call [movant] as a witness in this case. And that's the reason for his absence, Your Honor.

"THE COURT: I understand."

Movant's counsel then presented the testimony of three witnesses: movant's counsel at the jury trial, Detective Hall from the Greene County Sheriff's Department, and the prosecutor who represented the state at the jury trial. Their testimony was offered in support of the 12–page amended Rule 29.15 motion prepared by counsel, and the 67–page pro se motion earlier filed by movant.

Citing *Luleff v. State,* 807 S.W.2d 495 (Mo. banc 1991), movant argues that the foregoing record "appears to be abandonment by motion counsel," and that the court failed to make a record to determine if counsel's conduct constitutes abandonment.

A contention similar to that of movant was rejected in *State v. Tinch,* 860 S.W.2d 845 (Mo.App.1993), which included an appeal from the denial of defendant's Rule 29.15 motion for post-conviction relief. The court said, at 847[6–9]:

"Defendant's brief asserts several reasons why the denial of his post-conviction motion was wrongful.

"First, he asserts the motion court's decision to conduct the Rule 29.15 hearing without him present was clearly erroneous. This claim is without merit. Rule 29.15(h) specifically provides that 'at any hearing ordered by the court the movant need not

be present.' Furthermore, a Rule 29.15 proceeding is a civil proceeding which does not invoke Defendant's Sixth Amendment right of confrontation. *State v. Leisure,* 838 S.W.2d 49, 59[28] (Mo.App.1992). Therefore, the court's decision to proceed with the hearing in Defendant's absence was not clearly erroneous.

"Defendant also asserts his attorney's failure to file a writ of habeas corpus ad testificandum constituted an abandonment which entitled him to appointment of new counsel under the standard set forth in *Luleff v. State,* 807 S.W.2d 495, 497[1] (Mo. banc 1991). *Luleff* states that when there is no record of activity by counsel on movant's behalf, the court shall make an inquiry into the reason for the nonactivity. If it is due solely to the fault of the motion attorney, a new attorney will be appointed and additional time, if necessary, will be provided in order to file an amended motion. Since Defendant's counsel did file an amended motion and did conduct an evidentiary hearing, there was no abandonment under the *Luleff* standard.

"Defendant also asserts that his motion attorney's failure to secure his presence at the evidentiary hearing through a writ of habeas corpus ad testificandum constituted ineffective assistance of counsel. A claim of ineffective assistance of post-conviction motion counsel is generally not cognizable on appeal of a post-conviction judgment. *State v. Bradley,* 811 S.W.2d 379, 384[10] (Mo. banc 1991). However, such a claim may be considered if there is a total abandonment of counsel. *Luleff,* 807 S.W.2d at 497. As stated earlier, there was no abandonment by counsel under the standards set forth in *Luleff.* Therefore, this issue is not cognizable on direct appeal. Point denied."

This court agrees with the holding in *Tinch,* and that is fatal to movant's point.

The judgment is affirmed.

SHRUM, C.J., and MONTGOMERY, J., concur.