STATE of Missouri, Plaintiff–
Respondent,

v.

Kinya T. KERR, Defendant–Appellant.

No. 25057.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 12, 2003.

**460**

Vanessa Caleb, Asst. Appellate Defender, Kansas City, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Sara L. Trower, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JOHN E. PARRISH, Judge.

Kinya T. Kerr (defendant) appeals convictions of murder in the first degree, § 565.020, and armed criminal action, § 571.015.[1] Defendant was convicted following a jury trial. He was sentenced as a prior offender to life imprisonment without parole for the offense of murder in the first degree and imprisonment for 25 years for the offense of armed criminal action. The sentences were ordered served consecutively. This court affirms.

"For purposes of its review, this court accepts as true evidence favorable to the verdict together with all favorable inferences. Contrary evidence and inferences are disregarded." *State v. Skipper*, 101 S.W.3d 350, 352 (Mo.App.2003).

Tommy Buckner was driving an automobile on the north side of Sedalia, Missouri, during the early morning hours of July 15, 2001. The vehicle turned onto Washington Street when gunshots were fired striking Buckner's car and Buckner. Buckner died as a result of a gunshot wound to the back.

Defendant was questioned by police officers investigating Buckner's death. The initial questioning occurred July 25 and 26. Based on statements made by defendant, an individual named Rodney Potts was arrested and charged with murdering Mr. Buckner. Defendant was expected to testify at Potts' preliminary hearing.

Prior to Potts' preliminary hearing, defendant was asked to take a polygraph

---

1. References to statutes are to RSMo 2000.

test. Defendant told the officer who requested that he take the test that he wanted to talk to an attorney before agreeing to the test. The officer who asked defendant to take the test, Detective Sgt. DeGonia, testified at a suppression hearing that he talked to defendant after defendant had consulted an attorney. Sgt. DeGonia told the court, "I said, 'What did your attorney tell you about the polygraph test?' He basically said, 'No, I'm not taking it and don't talk to you about it.'" Defendant testified at Potts' preliminary hearing. He answered all questions asked of him at the preliminary hearing. Defendant did not assert his right to counsel nor did he state a desire to remain silent.

On September 18, 2001, police interviewed another witness, Lloyd Stoner, who implicated defendant in the murder of Tommy Buckner. After talking to Stoner, police again contacted defendant. Defendant agreed to accompany police personnel to the police department. Defendant was taken to a conference room. He was given the *Miranda*[2] warning, after which defendant gave statements that differed from what he had previously told police. The statements were incriminatory. Defendant admitted firing shots at the car in which Buckner was travelling. He stated he put the gun he used in the ceiling in his mother's room at her house. After defendant told the location of the gun, a search warrant was obtained and served at defendant's mother's house. Defendant went with the officers. He took the officers who served the warrant to the room he identified as the location of the gun. He pointed to a place in the ceiling. A ceiling tile was pushed up and an AK–47 rifle and an ammunition magazine for the rifle were recovered. The rifle and magazine were admitted in evidence.

■ Defendant filed a pre-trial motion to suppress his September 18 statements and the rifle and ammunition magazine that were seized. Following a hearing, the motion was denied. Defendant objected at trial to the admission of the statements and the rifle and ammunition magazine in evidence for the reasons stated in his motion to suppress evidence. The objections were overruled.

Appellate review of a ruling on a motion to suppress is limited to a determination of sufficiency of the evidence to sustain the trial court's finding. *State v. Villa–Perez*, 835 S.W.2d 897, 902[9] (Mo. banc 1992). "[I]n so doing, we examine all circumstances and the total atmosphere of the case, and defer to the trial court's vantage point for assessing the credibility of the witnesses and weighing the evidence." *Id.* "Only if the trial court's judgment is clearly erroneous will an appellate court reverse." *State v. Milliorn*, 794 S.W.2d 181, 183[5] (Mo. banc 1990). If the trial court's ruling "is plausible in light of the record viewed in its entirety," this court "may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 184.

*State v. Meinhardt*, 900 S.W.2d 242, 244–45 (Mo.App.1995).

Defendant presents one point on appeal. He asserts that the trial court erred in denying his motion to suppress evidence and in admitting "statements to police and an AK–47 rifle and magazine which were obtained by police as a result of [defendant's] illegally-obtained statements because [defendant's] statements were not voluntarily given." Defendant complains that a previously invoked Fifth Amendment right to have counsel present was

---

**2.** *See Miranda v. Arizona,* 384 U.S. 436, 86   S.Ct. 1602, 16 L.Ed.2d 694 (1966).

violated. Secondly, he argues the statements were coerced.

### Previously Invoked Fifth Amendment Right Against Self-incrimination

■ Defendant first contends he had invoked his Fifth Amendment right against self-incrimination before the statements about which he complains were made. Defendant bases his argument that the incriminatory statements he gave were contrary to his Fifth Amendment rights on his having told Sgt. DeGonia he wanted to talk to a lawyer before agreeing to take a polygraph test. This occurred before the preliminary hearing on the murder charge filed against Rodney Potts at which defendant was expected to, and did, testify. Defendant argues this constituted invoking his Fifth Amendment right not to be questioned without an attorney present; that the later actions of law enforcement personnel in eliciting his statements and recovering the rifle and ammunition magazine violated that right.

Defendant did not testify at the suppression hearing. His argument that Sgt. DeGonia was "unequivocally told ... that his attorney advised him riot to take a polygraph test and not to talk to Sgt. DeGonia" is based on Sgt. DeGonia's testimony at the hearing. Sgt. DeGonia was asked the following questions and gave the following answers:

Q. [by the prosecuting attorney] And after you confirmed that he had an appointment with the attorney, did you then talk with [defendant] about your desire that he take a polygraph test?

A. Yes.

Q. Tell us about that.

A. I tried calling him, couldn't get ahold [sic] of him. I drove by his mother's house. He was out in the yard with several other people. I said, "What did your attorney tell you about the polygraph test?" He basically said, "No, I'm not taking it and don't talk to you about it."

Q. Did you ask [defendant] at any other time to submit to a polygraph test?

A. No.

■ Defendant was not a suspect in the murder of Tommy Buckner at the time he contends he invoked his Fifth Amendment right to not be questioned without having counsel present. He was a witness who would be testifying at Rodney Potts' preliminary hearing. The Fifth Amendment right to counsel applies to, and may be invoked by, a suspect who is the subject of custodial interrogation. *State v. Reese*, 795 S.W.2d 69, 72 (Mo. banc 1990), *cert. denied*, 498 U.S. 1110, 111 S.Ct. 1025, 112 L.Ed.2d 1106 (1991); *State v. Meinhardt*, 900 S.W.2d at 245. Custodial interrogation is "questioning by law enforcement officers after a person is taken into custody or deprived of freedom in any significant way." *State v. Hicklin*, 969 S.W.2d 303, 310 (Mo.App.1998). "A custodial interrogation occurs only when the suspect is formally arrested or is subjected to arrest-like restraints. *State v. Dye*, 946 S.W.2d 783, 786 (Mo.App.1997). A person who is asked preliminary, investigatory questions by police officers is not in custody." *Id.*

At the time defendant asserts he invoked his Fifth Amendment right to counsel—a date prior to Rodney Potts' preliminary hearing—defendant was not, nor had he previously been, subjected to custodial interrogation. Defendant had no Fifth Amendment right to counsel at the time he contends he invoked that right. *State v. Seibert*, 103 S.W.3d 295, 300 (Mo.App. 2003); *see McNeil v. Wisconsin*, 501 U.S. 171, 182 n. 3, 111 S.Ct. 2204, 115 L.Ed.2d 158. (1991).

Even if defendant had a right to invoke the Fifth Amendment right to counsel when he talked to Sgt. DeGonia, his actions would not have sufficed to do so. To invoke a right to counsel pursuant to the Fifth Amendment, one must make an unambiguous, unequivocal and specific request for counsel. *State v. Bucklew,* 973 S.W.2d 83, 91 (Mo. banc 1998), *cert. denied,* 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999); *State v. Parker,* 886 S.W.2d 908, 918 (Mo. banc 1994), *cert. denied,* 514 U.S. 1098, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995). Defendant's discussions with Sgt. DeGonia were that his attorney had advised him not to talk to Sgt. DeGonia about taking a polygraph test when he had been asked to do so prior to Rodney Pitts' preliminary hearing. The subject about which defendant sought advice was whether to take a polygraph. That was the subject defendant advised Sgt. DeGonia that he did not want to talk about. Defendant's assertions in that regard would not have been sufficient to advise officers he wanted counsel regarding the criminal act they were investigating. "An accused must articulate his or her desire to have counsel present sufficiently clearly that a reasonable police officer, in the circumstances, would understand the statement to be a request for an attorney." *State v. Lanos,* 14 S.W.3d 90, 94 (Mo.App.1999).

### Coercion

Defendant further argues, in support of his claim that the trial court erred in denying his motion to suppress evidence and in admitting the rifle and ammunition magazine in evidence, that his September 18, 2001, admissions of guilt were coerced; that he was improperly threatened with the death penalty and threats to his personal safety. Defendant argues, for those reasons, his incriminating statements that resulted in the recovery of the rifle and ammunition magazine were involuntary.

The interrogation of defendant that is the subject of these complaints occurred September 18, 2001, after he had testified at the preliminary hearing of Rodney Potts and after he had become a suspect. It was a custodial interrogation. Defendant was advised of his *Miranda* rights before he was questioned.

Defendant complains that the threat of the death penalty and the expression that a relative of the victim who he was suspected of murdering was at the jail where he would be housed coerced his statement. A statement that a suspect could face the death penalty does not constitute a threat, but is a permissible observation of the possible consequences of first degree murder. *State v. Simmons,* 944 S.W.2d 165, 176 (Mo. banc), *cert. denied,* 522 U.S. 953, 118 S.Ct. 376, 139 L.Ed.2d 293 (1997). The advice to defendant that the death penalty was a possible punishment for the offense for which he was a suspect was not coercion.

Defendant's complaint regarding the victim's relative being in jail is based on statements made to him by Officer Susan Clevenger. Defendant had accompanied Detective Monte Richardson, Sgt. DeGonia and Commander Jim Gaertner to the police department for questioning. Officer Clevenger entered the room at the police department where the interrogation was conducted and participated in it. Officer Clevenger told defendant she believed Jeffrey Boggs, a relative of the murder victim, was in the county jail where defendant was going to be housed. Officer Clevenger testified at the suppression hearing that her reference to Jeffrey Boggs was not an attempt to intimidate the defendant; that she knew defendant was going to jail and it was in defendant's interest to know Boggs would be there. She told the

trial court, "I had heard Jeffrey Boggs was incarcerated for a crime he had committed against Bobby Joe Sims. And it is best if [defendant] revealed the facts of his involvement for us to best assist him." Bobby Joe Sims was also a suspect in the murder case about which defendant was being questioned.

■ Statements by an officer that cooperation is in a defendant's best interests are not improperly coercive and do not render a confession involuntary as a matter of law. *State v. Simmons,* 944 S.W.2d at 175. The credibility of Officer Clevenger's testimony was for the trial court to determine. Further, the evidence was that defendant had confessed to involvement in the murder before Officer Clevenger made the statement defendant contends was coercive. The trial court rulings denying defendant's motion to suppress evidence and overruling his objections at trial to the admission of the evidence were plausible in light of the record viewed in its entirety. Defendant's point on appeal is denied. The judgment of conviction is affirmed.

SHRUM, J., and RAHMEYER, C.J., concur.