Kinya T. KERR, Movant–Appellant

v.

STATE of Missouri, Respondent.

No. 26704.

Missouri Court of Appeals, Southern District, Division One.

Aug. 4, 2005.

Mark A. Grothoff, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lacey R. Searfoss, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Kinya Kerr (movant) was convicted, following a jury trial, of murder in the first degree, § 565.020, and armed criminal action, § 571.015.[1] *See State v. Kerr*, 114 S.W.3d 459 (Mo.App.2003). Thereafter,

movant filed a motion for post-conviction relief as permitted by Rule 29.15. Counsel was appointed and an amended motion filed. The motion was denied. Movant appeals contending he was denied effective assistance of appellate counsel in the direct appeal of his conviction. This court affirms.

Facts relating to the criminal offenses of which movant was convicted are set forth in this court's opinion in *State v. Kerr, supra,* the direct appeal of his criminal case. That opinion may be read in conjunction with this opinion for purposes of gleaning those facts.

The issues in this appeal relate to matters raised by movant's trial counsel in his criminal case but not pursued on direct appeal. Movant raises two points that he contends his appellate counsel should have raised in his direct appeal. He argues that failure of appellate counsel to raise those issues deprived him of effective assistance of counsel.

■ There is a fine line between an attempt to use a post-conviction proceeding for a second appeal and presentation of legitimate issues properly reviewable by post-conviction motion. "A motion for post-conviction relief is not a substitute for matters that could have been raised on direct appeal." *Fisher v. State,* 57 S.W.3d 329, 334 (Mo.App.2001). This court's review of the issues movant now raises is limited to considering whether movant's appellate counsel was ineffective in not raising those issues previously.

■ Point I is directed to the voir dire conducted in movant's criminal case. The prosecuting attorney asked questions of the venire about their willingness to consider accomplice liability. His remarks included:

---

1. References to statutes are to RSMo 2000.

In [sic] there will also be an instruction that talks to you about what is sometimes known as accomplice responsibility or responsibility of [sic] the conduct of another. I want to ask you if you could follow that instruction.

If the Judge tells you that a person is responsible for his own conduct and he is also responsible for the conduct of other persons if he acts together with those persons for the purpose of committing that crime then he is responsible also for what the other person did? Is there anyone who cannot accept and follow that instruction that talks to you about accomplice responsibility for the conduct of another?

The prosecuting attorney then began to give an example of acts he contended would result in one person being criminally liable for conduct of another. Movant's trial attorney objected to the prosecuting attorney "explaining instructions or giving examples," saying, "He can read the instruction and ask that they can follow it but nothing more." The trial court overruled the objection, after which the prosecutor continued:

The person who sits outside in the get away car if he does so knowingly and with the purpose to rob the bank is as guilty as the person who goes inside with the gun.

What I want to ask is [sic] each of you is, can [you] follow the Court's instruction which tells you when we act together with someone we do it for the purpose of committing a crime we're guilty along with that person and responsible for his or her conduct.

The prosecuting attorney then told the venire what he believed the evidence would be; that two other men were involved. He asked if the venirepersons "would ... make the State's evidence prove that it was this man, [movant], who fired the single fatal shot or can you accept

the fact that he may be responsible for the conduct of other people if he did that for the purpose of committing the crime?" He added, "Is there anyone here who would make me prove that the [movant] pulled the trigger and sent the fatal shot into the victim?"

The transcript from movant's criminal trial reveals that several jurors responded that they could not find a person guilty of murder resulting from a gunshot unless that person was the one who fired the fatal shot. The prosecuting attorney inquired of them individually, after which he inquired if there were "[a]ny other answers on that question?" He observed:

All right. So those of you who did not answer that question, which I think I talked to five or six of you who did have a problem from that, from the silence of the others I take it that you could say that a person was guilty of murder in the first degree even though he or she did not physically do the killing, fire the shot that killed the person if you believe that he or she acted together with the person that did and that they did so for the purpose of committing that crime. Okay.

The prosecutor then inquired about other matters. No reference was made by either the prosecuting attorney or any member of the venire to the bank robbery example the prosecuting attorney had used to illustrate when a person would be criminally liable for another's conduct.

In order to prove that he was deprived of the effective assistance of counsel on appeal [a defendant in a criminal case] must first show (1) that the actions of his appellate attorney were "outside the wide range of professionally competent assistance," and (2) that his counsel's errors were so severe that "counsel was not functioning as the 'counsel' guaranteed the defendant by

the Sixth Amendment" and (3) that counsel's deficient performance resulted in prejudice. To support a claim of ineffectiveness regarding an attorney representing the defendant on direct appeal from his conviction, "strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized and asserted it." [Footnotes omitted.] *Franklin v. State,* 24 S.W.3d 686, 690–91 (Mo. banc), *cert. denied,* 531 U.S. 951, 121 S.Ct. 356, 148 L.Ed.2d 286 (2000). "The right to relief ... due to ineffective assistance of appellate counsel inevitably tracks the plain error rule; *i.e.,* the error that was not raised on appeal was so substantial as to amount to a manifest injustice or a miscarriage of justice." *Reuscher v. State,* 887 S.W.2d 588, 591 (Mo. banc 1994), *cert. denied,* 514 U.S. 1119, 115 S.Ct. 1982, 131 L.Ed.2d 869 (1995). *See also Moss v. State,* 10 S.W.3d 508, 514–15 (Mo. banc 2000).

A review of the record in movant's direct appeal and the record in this case does not convince this court that the trial court in movant's criminal case erred in making the ruling about which movant now complains.[2] Regardless, had the ruling been erroneous, which this court does not find, it would not have, under the facts in this case, produced a manifest injustice or miscarriage of justice.

The jury in movant's criminal trial was properly instructed regarding responsibility for the conduct of another in accordance with MAI–CR3d 304.04. No allegation of error was made regarding that instruction on direct appeal, nor is it suggested in this appeal that the instruction was erroneous.

"When a jury receives proper and adequate instructions, it is presumed the jury will properly follow the instructions as given." *State v. Payton,* 895 S.W.2d 283, 285 (Mo.App.1995). *See also State v. Preston,* 673 S.W.2d 1, 7 (Mo. banc 1984). Point I is denied.

■ Point II is directed to appellate counsel in movant's criminal case not pursuing the trial court's rulings regarding the testimony of a witness. Movant contends he was denied effective assistance of appellate counsel in his direct appeal because his appellate counsel failed "to assert on direct appeal that the trial court had erred in overruling hearsay objections to testimony by Commander Jim Gaertner."

James Gaertner is a Sedalia police officer who holds the rank of commander of the Criminal Investigations Bureau. During the course of his testimony, Commander Gaertner was questioned about what occurred during his interrogation of movant. He testified that he told movant he knew the identities of the other two people who were involved in the shooting. Movant's trial counsel objected to the line of inquiry, stating that the line of questioning addressed what the witness knew about co-defendants in the case; that "[h]e ... couldn't know who was involved in the case. He could have suspicions, but he couldn't know." Movant's trial counsel continued, stating that he objected to the "whole line of questioning, it gets dangerously close to statements of the co-defendant."

The prosecuting attorney responded that he was not asking the witness to tell what he knew, but was asking what he told movant in an effort to cause movant to

2. *State v. Seddens,* 878 S.W.2d 89, 91–92 (Mo. App.1994), involved a similar situation to that in this case. No error was found in the direct appeal. This court discerns no circumstance in this case that warrants a different result.

admit his involvement. The trial judge, after being told how the prosecuting attorney wished to proceed, stated, "We'll start that way," after which movant's trial counsel stated he still objected "for the record."

The prosecuting attorney continued his inquiry by explaining to Commander Gaertner that what he was asking was what he told movant. He asked if Commander Gaertner told movant he believed movant was involved in the shooting and whether he told him the source of his knowledge. The officer answered that he did. Commander Gaertner said movant told him he would be truthful about what he did, but that movant did not state details about his actions. Movant argues that Commander Gaertner's testimony "contained inadmissible and prejudicial hearsay, to which trial counsel properly objected." The motion court concluded:

> During the course of the interview with Movant ..., Commander Jim Gaertner briefly spoke with Movant. Cmdr. Gaertner confronted Movant with information he had learned from other suspects or witnesses. This testimony was not hearsay because it was not elicited for the truth of the matter asserted but to explain what was said during the interview and how Movant reacted to this information. Cmdr. Gaertner's very brief mention of what he learned from other interviews was relevant and admissible for this purpose. Further, this brief discussion of statements made by codefendants, which was never argued or even mentioned to the jury during closing argument, was insignificant in light of the complete confession made by Movant.

 "Hearsay evidence is testimony about a statement made by an out-of-court witness offered to show the truth of the matter asserted." *State v. Baker*, 23 S.W.3d 702, 715 (Mo.App.2000). The motion court concluded that the testimony about which movant complained was not hearsay; that, therefore, appellate counsel in movant's direct appeal was not ineffective in not pursuing that issue.

The trial court's finding is not clearly erroneous. The witness at trial made no statement regarding what he had been told. Rather, he related that he told movant the nature of the knowledge he had accumulated and the source of his information. The testimony of the officer explained the course he followed in his interrogation of movant. The testimony was not offered at the criminal trial for its truth; neither was it, as argued by movant, testimony that invited the inference of hearsay as discussed in *State v. Valentine*, 587 S.W.2d 859 (Mo. banc 1979). Rather, as in *State v. Baker, supra*, at 716, Commander Gaertner's testimony was an explanation of the course of his participation in the investigation. It was not hearsay. Point II is denied. The judgment is affirmed.

PREWITT, P.J., and RAHMEYER, J., concur.