

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102115 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable David Lee Vincent, III |
| KURTIS E. STARKS, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 15, 2015 |

### Introduction

Appellant Kurtis Starks ("Starks") appeals from the judgment of the trial court entered after a jury verdict finding Starks guilty of one count of first-degree robbery. The trial court sentenced Starks to eighteen years in prison. On appeal, Starks argues that the trial court erred in denying his motion to suppress a confession he made during a police interrogation conducted in violation of his Miranda[1] rights. Because Starks did not unambiguously and unequivocally invoke his right to have an attorney present prior to or during his custodial interrogation, the trial court did not err in denying his motion to suppress. Accordingly, we affirm the judgment of the trial court.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

## Factual and Procedural History

Around lunchtime at a U.S. Bank branch in St. Louis County, a man came up to the teller window wearing dark clothing and a hat covering his face. The man passed the teller a handwritten note reading, "give me your money, hurry, or I'll f***ing shoot you." The teller immediately handed over money and the man left. Once the suspect left, the bank immediately went on lock down.

After a police investigation, Starks was arrested and questioned. Starks was advised of his Miranda rights and agreed to speak with the officer. The interrogation was taped and transcribed. Starks confessed and was charged with first-degree robbery.

Starks filed a pretrial motion to suppress the confession and the trial court held a hearing. Starks alleged, *inter alia*, that his "repeated requests to speak with an attorney, made both prior to and contemporaneously with the interrogation, were ignored by the interrogating officials." Starks also contended he "was not presented to a judicial officer 'as soon as practicable,' and [the statement] was obtained prior to presentation to a judicial officer." The relevant exchange between Starks and the police officers follows:

> [STARKS]: If I had—if I had—if I had a lawyer, then, still—I mean—
>
> [DETECTIVE 1]: Then your lawyer would talk to you and explain, after they make a decision over there, what the process is moving forward, okay? But it all starts—
>
> [STARKS]: I probably can't get out to get a lawyer.
>
> [DETECTIVE 2]: Well, as he already explained to you, the Court will provide a lawyer for you.
>
> [STARKS]: Your guys' lawyers.
>
> [DETECTIVE 1]: The courts' lawyers, not our guys.
>
> [STARKS]: What are you guys? State? Federal? What are you guys?

2

[DETECTIVE 2]: We're St. Louis County.

[STARKS]: So you're St. Louis County detectives?

[DETECTIVE 1]: Right.

[DETECTIVE 2]: Yeah.

After the suppression hearing, the trial court overruled Starks's motion to suppress his confession. The prosecution presented the taped confession and corresponding transcript to the jury at trial. Defense counsel renewed the objection to the confession during trial, and the objection was overruled. The jury returned a guilty verdict. Starks was sentenced to eighteen years in prison as a persistent offender. In his motion for new trial, Defendant claimed, *inter alia*, that the trial court erred in admitting his confession, because "[t]he Detectives made promises to the defendant in order to get him to make a statement against his will." The trial court overruled the motion. This appeal follows.

## Point on Appeal

In his sole point on appeal, Starks contends that the trial court erred in admitting his taped statement and corresponding transcript into evidence because the statement violated his right to counsel during a custodial interrogation. Starks argues that he inquired about an attorney, but that police continued the interrogation instead of clarifying and scrupulously honoring his request.

## Discussion

### I. Preservation of Error

As a threshold matter, we must consider whether Starks's claim is properly preserved for our review. To preserve an allegation of error for appellate review, an objection stating the

3

grounds must be made at trial, that same objection must be set out in the motion for new trial, and the objection must be carried forward in the appellate brief. State v. Jackson, 948 S.W.2d 138, 141 (Mo. App. E.D. 1997); see also Rule 29.11(d)[2] (requiring allegations of error in jury-tried cases to be included in the motion for new trial).

In his pre-trial motion to suppress, Starks argued that his confession should have been suppressed because "repeated requests to speak with an attorney, made both prior to and contemporaneously with the interrogation, were ignored by the interrogating officials." Starks also contended that he "was not presented to a judicial officer 'as soon as practicable,' and [the statement] was obtained prior to presentation to a judicial officer." Starks renewed the objection at trial. However, in his post-trial motion for new trial, Starks claimed only that "[d]etectives made promises to the defendant in order to get him to make a statement against his will." Starks did not include in his motion for new trial that he was questioned and made statements after he invoked and was denied his right to counsel.

On appeal, Starks again argues he affirmatively invoked his right to counsel, questioning continued, and a confession was obtained in violation of his constitutional rights. Because Starks failed to raise this point in his post-trial motion for new trial,[3] this issue was not preserved for appellate review. Accordingly, only plain-error review is possible. State v. Thomas, 423 S.W.3d 301, 302 (Mo. App. S.D. 2014); Rule 30.20.

## II. Plain-Error Review

Plain-error review is a two-step process. First, we determine whether plain error has occurred; that is, whether the claim for review facially demonstrates substantial grounds for

---

[2] All rule references are to Mo. R. Crim. P. (2015).
[3] Even Starks concedes the issues in the motion for new trial and on appeal are "slightly different."

4

believing that a manifest injustice or a miscarriage of justice has resulted. State v. Whitaker, 405 S.W.3d 554, 559 (Mo. App. E.D. 2013); Rule 30.20. In other words, this court must determine whether the trial court committed evident, obvious, and clear error affecting the defendant's substantial rights. Thomas, 423 S.W.3d at 302. If there is plain error on the face of the claim, the court has discretion to proceed to the second step: whether the claimed error actually resulted in a manifest injustice or miscarriage of justice. Whitaker, 405 S.W.3d at 559. If there is no plain error on the face of the claim, Rule 30.20 requires this Court to decline to exercise plain-error review. Bolden v. State, 423 S.W.3d 803, 812 (Mo. App. E.D. 2013).

The first step in our plain-error analysis considers whether Starks's claim facially demonstrates substantial grounds for believing manifest injustice or a miscarriage of justice has occurred. If a defendant's confession is inadmissible because it violates that defendant's Fifth and Fourteenth Amendment rights, the use of the confession may result in manifest injustice affecting substantial rights. State v. Beasley, 404 S.W.2d 689, 690 (Mo. banc 1966). Starks claims the confession violated his Fifth and Fourteenth Amendment rights to have counsel present during an interrogation.

In Miranda, the United States Supreme Court held "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. 436, 474 (1966). "[F]urther questioning can be had only if the accused voluntarily, knowingly, and intelligently initiates the communication." State v. Young, 781 S.W.2d 212, 214 (Mo. App. E.D. 1989); Edwards v. Arizona, 451 U.S. 477, 484–485 (1981) (Before an attorney is present, police can only interrogate further if the individual "initiates further communication, exchanges, or conversations with the police.").

5

For these protections to apply, the individual being interrogated must adequately assert the right to an attorney. This request for counsel must be unambiguous and unequivocal; if not, officers have no obligation to stop questioning the individual. Davis v. United States, 512 U.S. 452, 461–62 (1994); State v. Parker, 886 S.W.2d 908, 918 (Mo. banc 1994). The interviewee must specifically request counsel. State v. Kerr, 114 S.W.3d 459, 463 (Mo. App. S.D. 2003). The test is objective: an accused must articulate his or her desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. State v. Lanos, 14 S.W.3d 90, 94 (Mo. App. E.D. 1999).

In Parker, police interviewed the defendant after reading him his Miranda rights. The defendant said he understood his rights but refused to sign a waiver form. Parker, 886 S.W.2d at 918. After making incriminating statements, the defendant said he "ought to talk to an attorney." Id. The Missouri Supreme Court held this statement was not an invocation of his right to counsel because the statement was not unambiguous. Id. As in Parker, Starks's statements were not unambiguous. Starks said "if I had a lawyer" and "I probably can't get out to get a lawyer." Both of these statements were ambiguous because they expressed uncertainty as to whether Starks actually wanted a lawyer. As such, these statements fall short of a specific, unambiguous, and unequivocal request for an attorney.

A review of the record indicates no other specific requests for counsel. At most, there is general questioning about what type of counsel Starks could have, or whether he could "get out" of confinement to obtain counsel. The interviewing detectives even clarified that the court could

appoint Starks a lawyer.[4] Nevertheless, the record shows Starks made no unambiguous, unequivocal, or specific request for an attorney.[5]

Starks cannot facially demonstrate substantial grounds for believing that manifest injustice or a miscarriage of justice occurred because he never unambiguously and unequivocally invoked his right to counsel in his custodial interrogation. Therefore, the trial court did not plainly err in overruling his motion to suppress.

Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Patricia L. Cohen, J., concurs.

---

[4] The colloquy between Starks and the detectives suggests that Starks was not interested in a court-appointed attorney, which Starks referred to as "[y]our guys' lawyers."

[5] In his brief, Starks argues that the detectives did not "scrupulously honor[]" his rights when they, in response to Starks's equivocal statements, only told him the Court would provide a lawyer, but did not "make clear" that appellant could consult an attorney before continuing the investigation. It is often "good police practice for interviewing officers to clarify whether or not he actually wants an attorney." Davis, 512 U.S. at 461. These clarifying questions may help minimize the chance of judicial second-guessing as to the meaning of the suspect's statements. Id. But, officers have *no* constitutional obligation to ask clarifying questions. Id. at 461–62.