

# Missouri Court of Appeals

## Southern District

### In Division

STATE OF MISSOURI,

    Respondent,

v.

ALONZO T. MACK,

    Appellant.

No. SD38518

Filed: September 29, 2025

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Kaitlin Greenwade, Judge

**AFFIRMED**

Following a jury trial, Alonzo Mack (Defendant) was convicted of second-degree drug trafficking and second-degree possession of a controlled substance; *see* sections 579.068 and 579.015 RSMo 2016. In two points, Defendant argues that the trial court erred when it denied his motion to suppress evidence resulting from an unreasonable search and seizure and denied his motion to dismiss based on Sixth Amendment speedy trial grounds. Because Defendant's claims are without merit, we affirm.

**Factual and Procedural Background**

On May 29, 2020, Officers Nicholson (Nicholson) and Bolton (Bolton) conducted surveillance on a residence for suspected drug activity. They observed Defendant leave the residence with a lunchbox and get into a vehicle as a passenger. After the driver of the vehicle rolled through a stop sign, the officers initiated a traffic stop. Defendant was removed from the vehicle and consented to a pat down search. Nicholson felt a bulge in Defendant's pocket. When questioned, Defendant admitted it was marijuana.[1] Nicholson then directed Defendant to empty his pockets, and discovered a baggie which appeared to contain a large amount of methamphetamine, heroin and fentanyl. The lunchbox contained $6,000.00 cash and a cell phone. Two additional cell phones were located in the car. Defendant was arrested, booked and released.

Almost three years later, on March 7, 2023, the State filed its initial felony complaint alleging two counts of drug trafficking, which was later amended to one count of trafficking in the second degree, and one count of possession of a controlled substance.

Defendant filed a motion to dismiss based upon speedy trial grounds and a motion to suppress evidence resulting from the search and seizure. Defendant requested to represent himself, but that request was denied after a Faretta hearing. The motion to dismiss was also heard and denied. A hearing was then held on the motion to suppress on February 7, 2024, and was denied. The matter proceeded to trial and on February 23, 2024, a jury found Defendant guilty of second-degree drug trafficking and second-degree

---

[1] At the time of this encounter, Marijuana was an illegal drug in Missouri.

possession of a controlled substance. Defendant timely filed a motion for new trial, which was denied. Defendant was sentenced as a prior and persistent drug offender to 12 years' incarceration on Counts I and II to be served concurrently.

**Discussion**

In his first point on appeal, Defendant asserts the search of his person occurred outside the time necessary to conduct the stop, and thus Nicholson needed specific, articulable facts to support an objectively reasonable belief Defendant was participating in some further criminal activity. Defendant asserts without those facts the trial court clearly erred by failing to suppress the physical evidence acquired during his arrest and any testimony resulting therefrom.

> Any ruling on a motion to suppress must be supported by substantial evidence. This Court reviews the facts and reasonable inferences therefrom favorably to the circuit court's ruling and disregards contrary evidence and inferences. Whether a search is permissible and whether the exclusionary rule applies to the evidence seized are questions of law reviewed *de novo*. This Court is primarily concerned with the correctness of the trial court's result, not the route the trial court took to reach that result, and the trial court's judgment must be affirmed if cognizable under any theory, regardless of whether the trial court's reasoning is wrong or insufficient.

*State v. Douglass*, 544 S.W.3d 182, 189 (Mo. banc 2018) (quotation modified).

> A routine traffic stop based on the violation of state traffic laws is a justifiable seizure under the Fourth Amendment. *State v. Barks*, 128 S.W.3d 513, 516 (Mo. banc 2004). Such a seizure, however, "may only last for the time necessary for the officer to conduct a reasonable investigation of the traffic violation." *State v. Granado*, 148 S.W.3d 309, 311 (Mo. banc 2004).
> …
> A reasonable investigation of a stop for a traffic violation may include the following steps: (1) asking for the driver's license, registration and proof of insurance; (2) requesting that the driver sit in the patrol car; (3) questioning the driver about his purpose and destination; (4) running a

3

computer check on the driver and his vehicle; and (5) issuing a warning or citation. 'As long as the officer is investigating these items, running the records check, and issuing a citation, the officer may continue to conduct a reasonable investigation of the traffic violation by conversing with the driver.' *Thus, a routine traffic stop is not concluded until the warning or citation is issued.*

*State v. Kempa*, 235 S.W.3d 54, 61 (Mo.App. 2007) (quoting *State v. Jones*, 204 S.W.3d 287 (Mo.App.2006)) (quotation modified). *See also*, *State v. Dickerson,* 172 S.W.3d 818, 820 (Mo.App. 2005) (once the investigation of a traffic stop is concluded, the detainee must be allowed to proceed unless specific, articulable facts create an objectively reasonable suspicion that the individual is involved in criminal activity).

The dash-cam recording showed the officers approaching the vehicle 10 seconds after it came to a stop. Nicholson then took the driver's identification and spoke with the rear seat passenger while Bolton spoke with Defendant. Nicholson walked back to the police car where he performed a warrant and records check on the occupants and the vehicle, which took approximately two minutes. Nicholson then spoke with the driver briefly, walked the driver to the police car, and spoke to him for another 1 minute and 15 seconds to determine who owned the vehicle. Nicholson left the driver with Bolton and returned to the vehicle where he directed Defendant to step out. Nicholson then asked Defendant for consent to pat him down, which was given.[2]

Defendant urges this Court to consider that Nicholson "chose not to issue either a citation or warning for the traffic infraction." Defendant argues if no warning was issued,

---

[2] Defendant admits he granted consent. He only challenges the circumstances under which he granted consent.

4

the traffic stop ended as soon as the detectives determined the vehicle was not stolen and no criminal activity was taking place.

At the suppression hearing, Nicholson was asked, "Did you—would you have done a warning?" to which he responded, "Yes." He also testified that the traffic stop had "changed to a different type of investigation" after four or five minutes.

In support of his proposition, Defendant asserts "the key point" was that Nicholson "shifted to a new line of questioning based not on anything observed during the stop, but on unverified and generalized suspicions." (Quotation modified.) Defendant further attempts to infer that Nicholson "chose not to issue either a warning or a traffic citation." By doing so, however, Defendant is asking us to reconsider the factual inferences drawn by the trial court. The trial court had the ability to weigh both Nicholson's testimony and the dash-cam footage to make factual determinations as to the circumstances of the arrest. The trial court could have reasonably determined Nicholson took the driver to the police car to check for warrants and vehicle records, told the driver to stay by the police car, then asked Defendant to exit the vehicle, and finally obtained Defendant's consent all before issuing a final warning and/or releasing the driver and rear seat passenger, terminating the traffic stop. "This Court defers to the trial court's factual findings and credibility determinations, and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007) (quotation modified). Finding no error in the trial court's denial of the motion to suppress, point one is denied.

Defendant's second point asserts the trial court clearly erred in denying

5

Defendant's motion to dismiss his felony complaint under the speedy trial provisions of the Sixth Amendment to the United States Constitution and under Article I, Section 18(a) of the Missouri Constitution.

"To preserve an allegation of error for appellate review, an objection stating the grounds must be made at trial, *that same objection must be set out in the motion for new trial*, and the objection must be carried forward in the appellate brief." **State v. Starks**, 470 S.W.3d 410, 413 (Mo.App. 2015) (quotation modified); *see also* Rule 29.11(d) (requiring allegations of error in jury-tried cases to be included in the motion for new trial). Defendant correctly states that he repeatedly moved to dismiss alleging a violation of his right to a speedy trial, but he did not assert the issue in his motion for new trial. Thus, he did not properly preserve this issue for appeal.[3] Because the issue is not preserved, we review only for plain error. **Starks**, 470 S.W.3d at 414; *see also* Rule 30.20.

> Plain error review is a *discretionary* two-step process:
>
> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.
> …

**State v. Shepard**, 662 S.W.3d 761, 772 (Mo.App. 2023) (quotation modified).

---

[3] Defendant did not request plain error review. Rather, he claimed this point was preserved for appeal and requested a de novo review.

In this instance, for ease of analysis, we look to see whether a violation of the right to a speedy trial occurred. To do so courts must balance four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay. *State v. Sisco*, 458 S.W.3d 304, 313 (Mo. banc 2015).

Until there is a delay that is presumptively prejudicial, there is no need to inquire into the other factors. *Id.* In Missouri, a delay of more than eight months is generally considered presumptively prejudicial. *Id.* However, Defendant completely fails to appreciate that the delay in bringing a defendant to trial is measured from the time of the formal indictment or when actual restraints are imposed by an arrest. *State v. Howell,* 628 S.W.3d 750, 758 (Mo.App. 2021). Defendant argues that the time period for his right to a speedy trial should run from his initial arrest on May 29, 2020, but supplies no legal support for this assertion.[4]

The State filed its initial felony complaint against Defendant on March 7, 2023. Defendant's trial began February 21, 2024, 11 months and 14 days after charges were filed. "*Any* delay attributable to Defendant's continuances, motions, or other actions must first be subtracted from the total delay." *Id.* (quotation modified).

On October 30, 2023, the trial court held a pretrial conference in order to set the matter for trial. Defendant requested additional time to conduct depositions. The court granted Defendant 60 days. The court also requested that Defendant have the motion

---

[4] Defendant was released after his arrest with no formal charges filed at that time.

ready in 30 days so that the suppression hearing could be held in advance of the trial. Defendant did not file his motion until December 27, 2023, which was the end of the 60-day period. Further, at the hearing on October 30, 2023, Defendant remained undecided regarding self-representation and whether he wished to exercise his right to a jury trial. Yet, he persisted in asserting his right to a speedy trial.[5] When pressed by the trial court, who noted he was alleging a speedy trial issue, Defendant stated, "I guess I'm going to have to request a little bit more time to think about this." A Faretta hearing was held on November 9, 2023, to hear Defendant's motion to proceed pro se and a motion to dismiss on Sixth Amendment grounds was also heard at that time. Both motions were denied. As a result, the suppression hearing was not held until February 7, 2024, and the trial could not be set until February 21, 2024. Defendant did not object to these dates. Respondent argues, and we agree, the entire delay from October 30, 2023, to February 21, 2024, (3 months and 22 days) is attributable to Defendant.[6] In subtracting the total delay (the time between the filing of a formal criminal complaint and the date of trial) from the delay attributable to Defendant, the delay period is approximately one week short of 8 months. This delay raises no presumption of prejudice. Until there is a delay that is presumptively prejudicial, there is no need to inquire into the other factors. *Sisco*, 458 S.W.3d at 313.

We find no error, plain or otherwise, and deny point two.

---

[5] Defendant's indecision resulted in the Faretta hearing on November 9, 2023. The record reflects this was the earliest possible date for the hearing.
[6] We note that at trial, and even after in Defendant's motion for new trial, Defendant moved for a continuance and challenged the denial of that motion.

## Conclusion

The judgment is affirmed.

BECKY J. WEST, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, C.J. – CONCURS

MATTHEW P. HAMNER, J. – CONCURS